Jamil Malik Bey
in propria persona, and in the capacity of Trustee
on Behalf of the Immortal Jamil Malik Bey Reversioner
Trust in Northwest Amexem
In care of: [391 Ellis Street
Via San Francisco, California Republic]
Zip Exempt Without the United States
Authorized Representative for Marimar Cornejo

Marimar Cornejo
c/o 391 Ellis Street
San Francisco, California 94102
Marimarcornejo95@gmail.com
415-767-6676
in propria persona

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

*San Francisco*

| | |
|---|---|
| MARIMAR CORNEJO, an individual; Jamil Malik Bey, in propria persona and as Trustee for the Immortal Jamil Malik Bey Reversioner Trust in Northwest Amexem<br><br>Plaintiffs,<br><br>vs.<br><br>JEFFREY TUMLIN, officially as Director of Transportation of the San Francisco Municipal Transportation agency; the SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY; CITY & COUNTY OF SAN FRANCISCO; DAN SCANLAN individually; TEGSCO LLC d/b/a SAN FRANCISCO AUTORETURN; SAN FRANCISCO AUTORETURN LLC;  PACIFIC GAS AND ELECTRIC COMPANY; CAMERON A. HALE Individually and in his capacity as CEO of ALVAH CONTRACTORS INC.; ALVAH CONTRACTORS INC.; NELSONS TOW,  and DOES 1-20<br><br>Defendants. | CASE NO.: 3:20 cv-05813CRB<br><br><br>SECOND AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF<br>(42 U.S.C §§ 1983, 1988 & Constitutional Torts)<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs/Claimants, on the high principals of Love, Truth, Peace, Freedom, and Justice, for this amended claim against the above-named Defendants, declare as follows:

## JURISDICTION

1.      This action arises under the Constitution and laws of the United States for Defendant's Constitutional violations of the Fourth, and Eighth Amendments, which were deprivations of rights under color of state law in violation of Title 42 of the United States Code Sections 1983, & 1985.

2.      Jurisdiction is conferred upon this Court by Title 42 USC 1983, and by 28 USC Sections 1331 and 1332 (diversity of Citizenship). For purposes of this suit, the unlawful acts and practices alleged herein occurred at the City and County of San Francisco, California which is within the jurisdictional boundaries of this court. The damages sought are within the jurisdictional limits of this court.

## PARTIES

3.      Marimar Cornejo (hereinafter "Plaintiff Cornejo" or "Plaintiffs"), is a California Citizen and people of the United States of America.

4.      Jamil Malik Bey is a private, non-U.S. Citizen, Moorish American National, of the empire of Morocco; Aboriginal and Indigenous to the Americas. (see U.S. Hierarchical Code R1.01.052.004; see also Library of Congress Copyright, "AA 222141", Moorish American Zodiac Constitution and Nationality Card)

5.      On information and belief, CITY & COUNTY OF SAN FRANCISCO (hereinafter "CCSF"), is a municipal corporation duly organized and existing under the laws of the of State of California.

Plaintiffs 2nd Amended Complaint

6.      JEFFREY TUMLIN is herein sued in his individual and official Capacity as Director of SAN FRANCISCO MUNICIPAL TRANSPORATION AGENCY.

7.      SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY (hereinafter "SFMTA"), is sued as an unknown corporation and subdivision of Defendant CCSF.

8.      CAMERON A. HALE is sued individually and in his official capacity as President of ALVAH CONTRACTORS INC (a California Corporation).

9.      ALVAH CONTRACTORS INC is a California Corporation.

10.      PACIFIC GAS AND ELECTRIC COMPANY is a California Corporation.

11.      JOHN WICKER sued in his official capacity as CEO of TEGSCO LLC (an Oregon Limited liability Company) doing Business as AUTORETURN SAN FRANCISCO LLC.

12.      DAN SCANLAN, a California citizen sued individually and officially in the capacity as Vice President of TEGSCO LLC d/b/a AUTORETURN SAN FRANCISCO LLC].

13.      DOES 1-20 are employees and other persons personally liable for Constitutional Torts.

14.      Plaintiffs are ignorant of the true names and capacities of Defendants and therefore sue these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth in this Complaint. Plaintiffs will amend this complaint to state the true names and capacities in which Defendants operate once they have been ascertained.

1
2
3
## **INTRODUCTION**
4
15.     This second amended complaint comes after the February 12, 2021 order of the
5
Court. The amendment was supposed allow for plaintiffs to allege that Defendants ALVAH and
6
PG&E were State actors. We say they are, and offer the following authorities set forth hereafter
7
8
as amended by this Complaint.
9

10
 *Conduct by a private individual constitutes state action when (1)
the claimed deprivation " 'resulted from the exercise of a right
or privilege having its source in state authority,' " and (2) under
the facts of the particular case, the private party appropriately
may be characterized as a state actor. Villegas v. Gilroy Garlic
Festival Ass'n, 541 F.3d 950, 954–55 (9th Cir.2008)
(quoting Lugar, 457 U.S. at 939, 102 S.Ct. 2744). " '[T]here is
no specific formula for defining state action.' " Sutton v.
Providence St. Joseph Med. Ctr., 192 F.3d 826, 836 (9th
Cir.1999) (quoting Howerton v. Gabica, 708 F.2d 380, 383 (9th
Cir.1983) (citation and internal quotation marks omitted)).
Rather, a court should look to whether a sufficiently close nexus
between the state and the challenged conduct exists to fairly
attribute the conduct to the state. Id. The inquiry is fact
specific. Id.*
11
12
13
14
15
16
17
18
19
16.     Accordingly,
"*The Supreme Court has developed four different tests that "aid
us in identifying state action: '(1) public function; (2) joint action;
(3) governmental compulsion or coercion; and (4) governmental
nexus.' " Rawson*, 975 F.3d at 747 (quoting *Kirtley v. Rainey*, 326
F.3d 1088, 1092 (9th Cir. 2003)). *The "[s]atisfaction of any one
test is sufficient to find state action," but "[a]t bottom, the inquiry
is always whether the defendant has exercised power possessed
by virtue of state law and made possible only because the
wrongdoer is clothed with the authority of state law."* Id. *at 747–
48. See also* Williams v. Univ. Med. Ctr. of S. Nevada, 688 F.
Supp. 2d 1111 (D. Nev. 2010)
20
21
22
23
24
25
26
27
17.     Plaintiffs are the parents of a one-year old child, Plaintiff Cornejo is currently
28
unable to work in her normal and usual field due to the full-time needs of our son, and is on a

'fixed earnings' derived solely from unemployment, and from family support. We bring this suit for damages and injunctive relief in order to protect our threatened interest in our beloved 4 door 1998 Toyota Camry, which is the subject of this action (hereafter called "subject automobile" "car") which we have an immediate right to possession exclusive of each Defendant named in this Complaint, and Defendants were not only negligent, but were reckless, and malicious in the manner of the taking, and in their dealings and conduct which occurred after the taking.

18.      The automobile was taken from Plaintiffs without a warrant and without probable cause, and further without due process of law in what was a joint action by private actors ALVAH, PG&E, AUTORETURN and by public employees of the agency SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY (hereinafter "SFMTA"), which on my information and belief is an instrumentality or agency of the CITY AND COUNTY OF SAN FRANCISCO (herein after called "CCSF").

19.      As stated above, *"Joint action with state official to accomplish prejudgment deprivation of constitutionally protected property interest will support claim against private party under 1871 civil rights statute. U.S.C.A.Const.Amend. 14; 42 U.S.C.A. § 1983;.. See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)".

20.      AUTORETURN and its employees are deemed state actors on the basis that AUTORETURN is clothed with the authority of the state to seize automobiles on behalf of CCSF, and does so routinely and regularly, and profits from the seizures through its public auctions held on its behalf and on behalf of CCSF under a contract. AUTORETURN advertises the slogan at its facility at 750 7th Street, "CITY AND COUNTY OF SAN FRANCISCO IMPOUND Powered by AUTORETURN" thus showing the two are intricately entwined in their business dealings. This satisfies the "symbiotic relations" test mentioned *Rendell Baker v.*

*Kohn,* 457 U.S. 830, 842–43, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and the "public functions"

test mentioned in *Flagg Bros. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185

(1978).

21.     Our seized automobile at this moment is being held by employees and agents of

the private corporation TEGSCO LLC (doing business as "SAN FRANCISCO

AUTORETURN"), who as aforementioned were acting in a joint operation with SFMTA

employees at the time when it was wrongfully taken.

22.     Plaintiffs allege on information and belief that Defendant SFTMA despite the

claims of CCSF to the contrary, has a separate legal capacity to contract and hold assets, and its

business in seizing and selling cars at AUTORETURN Auctions is for profit and proprietary

rather than not for profit for governmental purpose.

23.     At all times mentioned in this complaint, the Legal Entity Defendants

AUTORETURN, ALVAH, and PG&E, including SFMTA and CCSF, are being charged as

"persons" acting under the color of State Law, because *inter alia* employees or agents thereof

were either clothed with the power of the state, acting jointly with Defendant CCSF a political

subdivision of the state, or were engaged in participating in an unconstitutional policy, custom,

or practice which violated Plaintiffs' rights in property protected by the 4th, and 8th

Amendments to the Constitution for the United States of America.

24.     CCSF & its parking authority SFMTA, by transferring police power duties to the

PG&E to place no parking signs at the scene of the towing, substituted their judgment to

Defendants PG&E and Alvah, who acted jointly with CCSF & SFMTA to cause the seizure of

our property. This act was an unconstitutional use of police power by Defendants CCSF

violating the Tenth Amendment's grant of reserved powers to the states or the people. A private

Plaintiffs 2nd Amended Complaint

corporation was not a person at the time the Constitution was created, and thus cannot be considered one of the people to whom powers not delegated to the United States was reserved to the states respectively or the people. See Tenth Amendment Constitution for United States of America.

25.     Plaintiffs hereby allege that Defendant CCSF does not deny that it claims to be a political subdivision of the State, (California) and thus it borrows Police Power therefrom, and by its act in delegating or transferring that Police Power [authority] to the permittee PG&E bestowing a privilege to place no-parking signs at the scene of the seizure (which is traditionally a 'State duty' [under police power]), clothed PG&E with the power of the State making it a State Actor, satisfying the Public Function test mentioned in *Flagg Bros. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

26.     When PG&E transferred this power to its subcontractor ALVAH CONTRACTORS INC as it's agent, it too became a state actor, and when it acted jointly with CCSF parking authority SFMTA to deprive us of our property without notice or opportunity to be heard prior to the deprivation, and further without probable cause to tow our property, by using its own judgment to assess the alleged violation, that act was a state action constituting and unlawful seizure in violation of the Fourth Amendment, and satisfied the "Public function" test, the "Joint action" test, and the "governmental nexus" test.

27.     In Supreme Court case *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288 (U.S.,2001) 531 U.S. 288, 296, 121 S.Ct. 924, 930,  the opinion of Justice David Souter, joined by justice Stephen Breyer mentioned the following:

> We have, for example, held that a challenged activity may be
> state action when it results from the State's exercise of "coercive
> power," *Blum,* 457 U.S., at 1004, 102 S.Ct. 2777, when the State
> provides "significant encouragement, either overt or

covert," *ibid.,* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar, supra,* at 941, 102 S.Ct. 2744 (internal quotation marks omitted). We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia,* 353 U.S. 230, 231, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) *(per curiam),* when it has been delegated a public function by the State, cf., *e.g., West v. Atkins, supra,* at 56, 108 S.Ct. 2250; *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 627–628, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton,* 382 U.S. 296, 299, 301, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

28.     Here, all the factors aforementioned in paragraph 13 were present; entwinement, significant encouragement, control, and willful participation in joint action. Defendants PG&E and Alvah were delegated power by CCSF to place no parking signs restricting public access to the street, and their employees initiated the towing and were captured assisting SFMTA and the Nelsons Tow truck at the scene, and further Cameron Hale after being notified by us about unconstitutional acts of his employees leading to our injury, refused to stop the action by notifying SFMTA that a mistake was made by Alvah and PG&E, and rather blamed the loss on us when he had constructive knowledge that his own employees failed to provide notice when they were charged with performing a public function in giving notice to the public via no-parking signs.

29.     Dan Scanlan on a phone call admitted that AUTORETURN operations are controlled by CCSF showing entwinement as set out in Evans v. Newton.

30.     Further, each Defendant Corporation, is vicariously liable for the negligent and wrongful acts and omissions of its <u>Directors</u>, <u>Officers</u>, <u>Employees</u>, and <u>Agents</u> done within and without the scope of their duties, and is here being charged with that liability and as Surety for

each responsible person who intentionally, or negligently, caused injury by violating the Constitution for the United States of America in the performance of their duties.

31.     At the time of the wrongful taking of the subject automobile by the above mentioned Defendants, SFMTA employees were acting pursuant to local policy, and pursuant to a statutory scheme set out by California Vehicle Code sections 22650 et sq, and further were acting under an unofficial custom and practice where Defendants wrongfully seize property for commercial gain without due process of law, and Municipal Defendants subsequently fail to provide adequate constitutional safeguards to correct the wrongful deprivations, resulting in serious suffering and emotional distress to the injured party from the indefinite dispossession of their property.

32.     Therefore, as a result of Defendants CCSF engaging in an unconstitutional policy of transferring police power to private entities not accountable to the people, and those entities acting jointly with CCSF and SFMTA to deprive the people of property under allegedly Tenth Amendment Police Power, Defendants at the time they committed the taking of our car unlawfully under the unconstitutional policy were acting under color of state law for purposes of liability under Title 42 USC section 1983, and used an official policy of CCSF to accomplish the wrongdoing.

33.     Jamil Malik Bey as trustee of the Immortal Jamil Malik Bey Reversioner Trust in Northwest Amexem, is an indispensable party to this claim having legal duty to protect the subject Automobile, and reserves all rights.

34.     This suit is further against Doe Defendants whose names and capacities are unknown to us at this time, but are employees of ALVAH, PG&E, CCSF and SFMTA, and further are Bond and Insurance carriers, and other persons who may be liable for the injuries

and Constitutional Torts caused. We hereby sue for subrogation into the rights of the "Insured" under any respective policy or bond of Defendants, and for Judgment against the sureties for the proceeds from the respective policy.

35.    'Municipal Government Immunity' has been waived under these circumstances pursuant to California Government Code sections 810-815. SFMTA and CCSF are liable for any act or omission done by one of its employees acting within the scope of their official duties, as set out by Government Code Sections 815.2 subdivision (a), and as set out hereafter.

36.    The automobile was taken in bad-faith by Defendants since they were knowingly acting without a justifiable legal or lawful cause, which resulted in a deprivation of property in violation of the Fourth Amendment to the Constitution for the United States of America, because the seizure was truly unreasonable and unnecessary, and further there was no notice given or opportunity to be heard prior to the deprivation, when the car was not a public safety hazard or traffic exigency justifying use of police power, and there was no consent given by us to the persons liable for its wrongful taking.

37.    At All times mentioned in this Complaint, Defendant PACIFIC GAS AND ELECTRIC COMPANY (Hereinafter and heretofore "PG&E") who was the contractor who hired the subcontractor, ALVAH CONTRACTORS INC (Hereinafter and heretofore "ALVAH"), is herein alleged to be the 'owner' of the transmission lines for which work was being performed which was the reason and cause for Defendant contractors to use the streets on the day they called SFMTA, and participated in the towing of the subject automobile to a locked facility controlled by TEGSCO LLC doing business as AUTORETURN (hereinafter "AUTORETURN").

38.     PG&E and ALVAH are private corporations subject to Section 22658 of the California Vehicle Code, as private owners of private property for purposes of the regulatory scheme set out by Vehicle Code Section 22650 et sq.

39.     Employees or contractors under the direct supervision and control of Defendants BILL JOHNSON, and CAMERON A. HALE, who control the Defendant Entities 'ALVAH' and 'PG&E', breached a common law duty of care owed to Plaintiffs, and further breached a statutory duty under California Vehicle Code Section 22658, to provide reasonable notice to the public on appropriate signage, that no public parking is permitted at the site where Plaintiffs car was towed from. This breach makes the Seizure unlawful under the Fourth Amendment and violates due process of law.

40.     Employees and Contractors of Defendants PG&E and ALVAH failed to provide this requisite notice as required by statute, and therefore were negligent, and aside from any statutory duty or obligation imposed on Defendants, providing notice to Plaintiffs of intent to deprive us of property is only fair and just, and Defendants without giving any notice of towing, and initiating the towing with knowledge that notice was not given, was a bad-faith act which was unjust, unfair, and inequitable.

41.     Cal. Veh. Code Section 22658 subdivision (e)(1) allows for statutory damages to be awarded to the owner of an automobile in the amount of double the storage or towing charges against his property whenever there has been a failure to comply with paragraphs (1) (2), or (3), which is the notice requirement that the Defendants CAMERON A. HALE, and BILL JOHNSON  acting through their employees failed to comply with. We request this model be used to calculate the damages for Defendants constitutional torts which violated the Fourth Amendment in the wrongful seizure of the subject automobile.

42.     The Statutory remedies provided above are cumulative to any other remedies that may be available to an injured party, and Plaintiffs hereby allege that on information and belief Storage Charges against the property as of February 2021 exceeds $23,000 and thus Defendants should be found liable for double that amount for the wrongful possession of the subject automobile.

43.     Written Notice was given by us to Defendants Dan Scanlan, Cameron A. Hale, and Jeffrey Tumlin, to return the Car to us, and we further notified Defendants the seizure was unconstitutional and unwarranted, but Defendants ratified the wrongful actions by either expressly denying liability or by continuing to prolong the seizure despite our notice and demand for the property back.

44.     Therefore Defendants are liable in their individual capacities and officially as state actors. *"The requisite causal connection [for liability in a defendant's individual capacity] can be established ... by [the defendant] setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."* *Id.* at 1207–08 (quoting *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001)) (internal citation and quotation marks omitted).

45.     The subject Toyota Camry was parked at approximately 4pm on February 27, 2020 (**See Exhibit A**), and at that time there was no warning signs near the car giving notice to the public provided by Defendants, giving notice of a construction site or towing at owner's expense.

46.     Persons in fluorescent jackets whom Plaintiffs reasonably believe were contractors or employees working at that moment for Defendant ALVAH, at approximately

7:13 pm were captured on surveillance video placing an Orange cone next to the subject automobile **(See Exhibit B)** giving notice to the public of towing for the space where our car was already parked at.

47.     Later on, that evening, at approximately 8:46 pm the car was ticketed by SFMTA employees **(see Exhibit C)** and towed by Nelsons Tow company at 9:13 pm **(See Exhibit D)** resulting in the direct loss of our control and dominion over the automobile.

48.     Defendants and each of them were in some form and way responsible for the wrongful and unjust taking of the automobile, the full extent of their liability is unknown at this time, and we do intend to amend the complaint to assert the true agency and capacity of all the parties as it relates to their involvement in the wrongful taking of the subject Automobile.

49.     Some of the Defendants are unknown to us at this time, and we therefore sue those persons as Doe Defendants, and we will amend the record once the true names and capacities of those persons is ascertained.

### Additional Facts

50.     The claims requirements under the 'Governmental Claims Act' have been satisfied or are inapplicable to this action.

51.     CCSF is deemed to be a public entity, and at all times in this complaint was the "public entity" responsible and liable for the acts and omissions of the same SFMTA employees who caused injury as set out in this complaint, who were acting under an unconstitutional official or unofficial policy, custom, or practice as aforementioned.

52.     At all times relevant, the SFMTA employees who are responsible for the act of initiating the towing of our car were persons under the direct supervision and control of Defendant Jeffrey Tumlin, who is an "elected official" responsible for the operation of the

Plaintiffs 2nd Amended Complaint

SFMTA pursuant to the Charter of the City and County of San Francisco, and pursuant to the general and special laws of the STATE OF CALIFORNIA.

53.     The non-discretionary act by the SFMTA employee to initiate the ticketing and towing of our car in accordance with an unconstitutional local policy granting PG&E police powers as aforementioned, were official acts authorized by local policy and by statute, taken within the regular course and scope of the employees official duties, and thus were acts under color of state law indicating liability against Municipal Defendants under *Monell v. DEPARTMENT OF SOCIAL SERVICES OF the CITY OF NEW YORK et al.*

<u>*Defendants are not Immune from liability*</u>

54.     Defendants have no immunity from constitutionally based claims, or from claims arising under federal statutes such as 42 USC 1983. (See Buenavista v. City and County of San Francisco, 207 Cal. App. 3d 1168, 255 Cal. Rptr. 329 (1st Dist. 1989); Martinez v. California (1980) 444 U.S. 277, 284).

55.     Pursuant to California Government Code section 810.8, "'injury' *means death, injury to person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person"*. Therefore, Defendants were public employees who caused an injury to us by interfering with our enjoyment of the seized property as protected by the Constitution, further causing panic, fear, embarrassment, and mental anguish.

56.     Pursuant to California Government Code section 815.2(a), "*a Public entity is liable for an injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative"*.

57.     The act of SFMTA employees which caused the deprivation of our property was based on a private agreement between CCSF to sell to PG&E (permittee) an exclusive right to use certain portions of the public street, so that PG&E can exclude the rest of the public. This arrangement was merely a private commercial act rather than a legitimate Government Function related to the urgent abating of a public safety hazard, or traffic exigency, which is interrupting public trade, commerce, or transportation.

58.     SFMTA employees did not remove the subject automobile for one of the permissible reasons set out in California Vehicle Code Section 22651, and thus it is recognized by Cal. Gov. Code Section 22650 subdivisions (a) and (b), that the seizure was unreasonable in violation of the Fourth Amendment.

59.     Further, at all times relevant here, the car posed no immediate danger to the public or created any valid urgent need by Defendants to remove the car from the street where it was parked, but "public employees" of CCSF and AUTORETURN removed it without first providing us any notice at all, and also without providing us an opportunity to be heard by a detached and unbiased magistrate at any time prior to the deprivation, or at any time after the deprivation violating our right to due process of law pursuant to the Constitution for the United States of America which Defendants are subject to.

60.     *"Central meaning of "procedural due process" is that parties whose rights are to be affected are entitled to be heard and, in order that they may enjoy that right, they must first be notified"* (See Fuentes v. Shevin , 407 U.S. 67, 92 S.Ct. 1983 (1972)) .

61.     Plaintiff Cornejo's protected right to Due Process of Law according to the supreme law of the land is Res Judicata, and stare decisis, making this right the Supreme Law

of the Land binding on all Defendants pursuant to Article 6, affirmed by Goldberg v. Kelly 397 U.S. 254, 90 S.Ct. 1011 (1970) and Grannis v. Ordean, 234 U.S. 385 (1914).

62.     The actions of Defendants in failing to give notice and an opportunity to be heard prior to the deprivation of the subject automobile, also violate the Constitution of California Article 1, Section 15, Clause 7.

63.     Employees of Defendant SFMTA gave one formal reason for the towing which by their own admission was based on the fact the car was parked in a "construction zone", and that the permit holder (PG&E) or it's Subcontractor ALVAH called to initiate a tow. Since no notice of towing or construction site was given to us by Defendants ALVAH and PG&E, this was not a valid reason to initiate a tow under any statutory authority, and was not a justifiable or valid use of police power of a State, and they were negligent and wrongful in their actions to deprive us of the possession of our property.

64.     The interest of CCSF and SFMTA in this matter, was only in carrying out the private contract and agreement allowing PG&E to arrange the towing of cars in the Construction zone to which they purchased a permit from CCSF. SFMTA employees admitted that to Plaintiffs on two occasions that it would be illegal for any employee thereof to initiate a towing of a car which was found at a construction site, without first being called by the permit holder to report the violation, showing the private nature rather than government function. This is the same procedure as with any private driveway owned by any private party, the Municipality cannot just tow a car because its blocking the driveway without consent, it must have an injured party.

65.     On information and belief pursuant to Article 15, Section 724.3 of the SF Public Works Code, we allege that the Defendants PG&E and ALVAH were required to place the 'no

parking signs' 72 hours before they begin towing any car found at the construction site, and therefore they were negligent in failing to do so, and it was simple and easy for arriving SFMTA employees to determine that based on records which they should have control and access to, the permit was issued to Defendants PG&E at approximately 9 a.m. the same morning they towed the subject automobile, and thus only 12 hours had expired rather than 72 hours, indicating Defendants violated their duty under the notice requirements.

66.     All Defendants, after the towing of the subject Toyota Camry had reasonable time to discover the facts of whether the tow was wrongful, but they did not ever contact any of the owners to investigate, thus intentionally failed to conduct an adequate investigation, and intentionally kept the car with knowledge that their actions were more likely than not wrongful, and without merit, and that their actions were likely to cause continued and increasing injury to us in violation of the Constitution.

67.     Defendants, CCSF and AUTORETURN, would be unjustly enriched by being paid over $23,000 in excessive fees and fines arising as a result of the unlawful taking of the automobile, if they were to collect any of the amounts they require in order us to regain possession thereof. The fines and fees were disproportionate to any alleged violation, and it not only would it be impossible for us to tender the payment to them since we do not have the amount they request, it would be unjust and unfair, and would encourage Defendants to continue the conduct constituting seizing property from private persons without valid legal or lawful authority.

68.     District Courts have recognized that the seizure of the car alone constitutes irreparable injury, (see Monterey Mech. Co v. Wilson, 125 F.3d 702, 715 (9th Cir. 1997)) ("alleged constitutional infringement will often alone constitute irreparable harm"); (Mills v.

District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009)) (loss of 4th amendment freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976).

69.     Defendants SFMTA over time have showed a continuous pattern of wrongful seizures of our property. In 2015 Defendant's seized our 2012 Toyota Camry that was parked for more than 3 days in the same space, and in 2017 Defendants seized our 2015 Nissan Altima by first booting the car, then towing it some 48 hours later, and subsequently denied myself and the other owner due process of law at a 'Boot Hearing' held at the SFMTA Customer Service center.

<u>Defendant Dan Scanlan is personally liable for his conduct in committing and ratifying a<br>Constitutional Tort</u>

70.     As aforementioned, after the deprivation of our property, Dan Scanlan was given notice that his conduct was causing injury in violation of the Constitution and Federal Code, and therefore knew he was in unlawful possession of the subject automobile, he thus acted outside his legal and lawful scope of authority since a limited Liability Company cannot grant it's officers the legal privilege to do an unlawful or illegal act, such as he did here when he allowed for the continued theft of our car, and held it for ransom charging us excessive fees in violation of the Eight Amendment.

71.     Further, Defendant Dan Scanlan was liable in his individual capacity for participating in a 'State action' (for purposes of liability under Title 42 Section 1983), since he as the Vice President was clothed with the power of the state, and ratified the unlawful seizure continuing to deprive us of property in concert with Municipal Defendants who were also deemed 'state actors,' and Scanlan was a material factor in refusing to return the property being a supervisor, and continuing to detain it with the intent to gain profit knowing his actions were

Plaintiffs 2nd Amended Complaint

likely to cause constitutional deprivations, making him liable in his individual capacity. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001))

72.     The Supreme Court in *Sniadach v. Family Finance Corp* 395 U.S. 337, stated, "court has consistently held that constitutional requirements of due process apply to garnishments and prejudgment attachment procedures whenever officers of the state act jointly with a creditor in securing property in dispute".

<u>JEFFREY TUMLIN</u>

73.     DEFENDANT, Jeffrey Tumlin in his official capacity is a public official charged with the duty to act in good faith as to all his dealings, is bound by the Constitution for the United States of America, and may not deprive us of property in violation of International Law, or the laws of the United States, which he did when he ratified and continued the deprivation of property which he knew would lead to a constitutional tort based on our establishing those facts with him at a time when he could have halted the seizure.

74.     In addition, Jeffrey Tumlin could have abated the excessive fees charged to us which were in violation of the Eight Amendment in connection with the unconstitutional seizure, but he refused to abate the unconstitutional practice violating his oath of office, and making himself liable in his individual capacity.

<u>Excessive Administrative Fees Charged in Connection with AUTORETURN Storage</u>

75.     As aforementioned, the excessive fines or fees charged by CCSF, and AUTORETURN in violation of the 8th Amendment are as follows:  $298, allegedly owed to THE CITY AND COUNTY OF SAN FRANCISCO for its Administrative Fee arising from the alleged illegal act of parking inside of a 'construction zone'. In addition, Defendants Dan Scanlan, and AUTORETURN, claimed we owed $258 to AUTORETURN for arranging our

car to be towed by Nelsons Tow Company, when Nelsons charges only $58 for the same tow at the same distance.

76.   Defendants Dan Scanlan, AUTORETURN, CCSF, and SFMTA only paid $56 to Nelsons Tow company but represented to us a charge of $256 for the tow, thus making over 200 percent profit from the towing charge alone.

77.   The Supreme Court has declared that the Eighth Amendment to the Constitution for the United States of America's protections against excessive fines in Civil Forfeitures, is a fundamental right, incorporated into the 14th Amendment, and applicable to the States, see Timbs v. Indiana, 139 S. Ct. 682, 687 (2019)); _McDonald_ v. _Chicago,_ 561 U.S. 742, 767, 130 S.Ct. 3020, 177 L.Ed.2d 894), and expressly prohibits Defendants from issuing excessive fines as they did here in the unwarranted seizure of the subject automobile.

78.   Defendants conduct had a chilling effect on our exercise of rights to travel, and park freely, and to the peaceful enjoyment of our private property from interference by strangers.

79.   Therefore, Defendants CCSF, and AUTORETURN, engaged in an unlawful conspiracy to deprive us of both the subject automobile, and of money of exchange, by conspiring to extort us of over $23,000 by holding the subject automobile without valid legal or lawful right, and demanding we tender payment to Defendants in a specific form of tender in an amount which is excessive, outrageous, and shocking thus violating the 8th Amendment.

<u>Cameron Hale</u>

80.   Cameron Hale, during all times relevant is, and was, the Chief Executive Officer of Defendant Alvah Contractors in control of its employees and general affairs, and had a duty

to act in good faith in all of his dealings, and to obey the constitution and laws of the United States, and State of California.

81.     We mailed a claim and demand letter addressed directly to him notifying him of constitutional violations and violations of international law, and demanding he take immediate action to lessen the injury to us.

82.     Instead of Cameron Hale responding, his Secretary and Chief Financial Officer Dennis Mueller personally responded to our notice of claim and Demand for the return of our car mailed on or about February 29, 2020, and thus on information and belief he was acting for Cameron Hale who had personal knowledge that an act or omission occurred by one of the persons under his direct supervision and control, causing loss of our property, and that the duty was placed upon Him as CEO to act to immediately return the property. He further had knowledge that the injury was a constitutional tort.

83.     Hale, instead of making arrangements to admit to SFMTA that he made a mistake and wrongfully acted in the joint operation to tow our car, and therefore pave a way for it to be returned to us, his Secretary Dennis Mueller sent an inflammatory email on behalf of Hale making frivolous defenses in bad faith aimed at my National Identity, and accusing us of wrongfully parking when he did not have reason to believe his statement was true.

84.     Therefore, Cameron Hale ratified an unconstitutional act or omission done by a person under his direct supervision and control, and he personally undertook the liability under the notice he received from us such to make him personally liable in a joint 'state action' to deprive us of property under color of law, and continuing to deprive us of property when he reasonably knew it would lead to constitutional deprivations.

**Damages**

21

85.     As a proximate result of each DEFENDANTS' conduct in seizing our property, we suffered humiliation, shock, panic, mental anguish, prolonged excessive anxiety from being deprived of our car, and from the shock and anxiety stemming from expenses to recover damages from Defendants, economic losses including loss of earnings, rental car fees, west law legal fees in the amount of $15,218.76, copy and print fees to be determined, loss of future earnings to be determined, loss of enjoyment of life, uber fees, cost related to suit to be determined, and cost to replace the subject automobile of $4000.

86.     Further as a direct result of the Seizure, we suffer ongoing fear, anxiety, and apprehension each and every time we park our car in a space which appears to be open and free especially when it's near a construction site.

87.     As aforementioned as a direct result of our loss of the subject automobile, we suffered loss of expected earnings in the sum approximate of $3500, and out of pocket expenses of $203.57, and were required to rent a car during the days of March 3, 2020 through July 7, 2020 incurring expenses of $4,003.41. Just compensation is hereby demanded from Defendants and each of them for each and every loss sustained by us which can be reasonably proven or shown by testimony.

88.     Punitive Damages is hereby demanded against Defendants Dan Scanlan individually, Cameron Hale individually, AUTORETURN, SFMTA, CCSF, ALVAH, & PG&E, for violation of the 4th and 8th Amendments, since employees showed malice and despicable and reckless conduct by intentionally depriving us of property knowing they were without following mandatory regulatory state and local procedures, and by using deceit and bad faith in continuing to keep possession of our Car when they were aware they were injuring a Pregnant mother depriving her of a means of subsistence.

**FIRST CAUSE OF ACTION**
**Violation of FOURTH AMENDMENT**
**(42 U.S.C. §1983)**
**(PLAINTIFFS Bey, CORNEJO v. DAN SCANLAN individually, CAMERON HALE**
**individually, TEGSCO LLC d/b/a AUTORETURN SAN FRANCISCO, ALVAH, PG&E,**
**JEFFREY TUMLIN Individually, SFMTA, CCSF, NELSONS TOW, AND DOES 1-25**
**INCLUSIVE)**

89.     All prior paragraphs are realleged and incorporated into this section as though set forth in full herein.

90.     The DEFENDANTS CCSF, SFMTA, AUTORETURN, and NELSONS TOW, violated our right as provided for under the Fourth Amendment to the United States of America Constitution, to be free from unreasonable searches and seizures, by seizing the Toyota Camry on February 27, 2020 without a warrant and without probable cause.

91.      According to the Fourth Amendment, seizure of property must be by warrant specifying the particular places to be searched or things to be seized, and must be based on a substantial probability that the property is related to the committing a crime.

92.     None of the exceptions to this rule exist here.

93.     The subject automobile was not involved in any crime, and was not a public safety hazard or public traffic exigency at the time SFMTA public employees acted jointly with ALVAH contractors the agents of PG&E, and NELSONS TOW COMAPANY employees to unlawfully seize and remove the subject automobile to a locked facility controlled by AUTORETURN and CCSF. Defendants violated the Notice requirements necessary to alert Plaintiffs of the intention to tow cars where the subject automobile was parked, therefore, the

DEFENDANTS above-described conduct constituted an unreasonable seizure in violation of the Fourth Amendment.

94.     As aforementioned in this complaint, Private actors became state actors acting under color of state law (see ¶15-31 supra).

95.     Jeffrey Tumlin, Dan Scanlan, and Cameron Hale, as stated in paragraphs 15-31 were given written and verbal notice and were personally aware of the wrongful conduct violating the Fourth Amendment, and ratified the conduct by continuing the deprivation rather than immediately halting the deprivation.

96.     As a direct result of the above described conduct of DEFENDANTS in seizing the subject Toyota Camry belonging to Plaintiffs without our consent, and without adequate notice, interfering with the right to immediate possession thereof, we suffered severe emotional distress, surprise, shock, fear, economic losses, and out of pocket expenses. Further as a result of Defendants wrongful conduct we suffer continued fear and apprehension each day to park a car in a vacant lawful space, since Defendants towed our car when it was parked in a vacant space without any notices, shocking and surprising us.

WHEREFORE, Plaintiffs demand relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**(42 USC 1983)**
**(VIOLATION OF THE 8TH AMENDMENT )**
**(PLAINTIFFS Bey, CORNEJO v. DAN SCANLAN, TEGSCO LLC, AUTORETURN SF LLC, JEFFREY TUMLIN, SFMTA, CCSF, AND DOES 1-10, inclusive)**

97.     All prior paragraphs are realleged and incorporated into this section as though set forth in full herein.

98.     All Defendants named in this section substantially participated in, or were substantially responsible for, other persons under their direct supervision and control who participated in the state action and seizure of our Automobile.

99.     As stated above, Defendants named under this cause of action were acting under color of law using the alleged police power of the State, and thus the act to seize the subject automobile and the fees charged by the Defendants related thereto, are deemed to be a "state action" for purposes of liability under 42 USC 1983.

100.     Defendant Dan Scanlan who is the Vice president of AUTORETURN, was a material actor involved in carrying out the seizure and continued detention of the subject automobile under the state action, and owed a duty to Plaintiffs not to participate in that State action which deprived us of possession of the subject automobile causing injury, and Dan Scanlan personally profited from excessive fees being charged to return the subject automobile to its owners.

101.     Defendant Dan Scanlan and AUTORETURN on behalf of SFMTA & CCSF further charged us an "administrative fee" of $298.75 for the seizure of the subject automobile in addition to the $76 citation for parking in the alleged construction zone, meaning CCSF and SFMTA would earn $374 in addition to any amount privately agreed upon under the Contract Defendants have with each other related to their joint business venture in the operation and control of AUTORETURN impound. This is an excessive fine and penalty in violation of Eighth Amendment.

102.     Further, Defendants Dan Scanlan and AUTORETURN charged us $238.25 for towing cost stemming from the seizure of the subject automobile, when NELSONS TOW COMPANY only charged Defendants $56 to tow the car, showing a misrepresentation of cost by

Defendants in their accounting, or showing that Defendants were intentionally profiting from allegedly lawful governmental duties.

103.    Therefore, Defendants charged excessively more than the reasonable cost that Plaintiff would incur to tow the car from the same location to where Defendants towed it on February 27, 2020, if Plaintiffs called the same tow operator privately and requested for a tow.

104.    All public officials of the State of California and CCSF have sworn and oath to the United States Constitution, and are bound thereby, and pursuant to the Eighth Amendment which Defendants violated, may not charge the people excessive fees, and fines in connection with a state created danger or seizure.

105.    As a direct result of defendants above-mentioned conduct, we were overcharged for excessive Tow fees as stated above, which $182.25 was in excess of what we could get for the same service without Defendants assistance, and further Defendants as of February 8, 2021 requested over $23,340.50 for us to recover the subject automobile which is excessive in violation of the 8th Amendment.

106.    These excessive fees charged, resulted in Detriment and suffering to us, since the excessive nature of the fees were the direct cause which prevented us from being able to recover possession by paying Defendants the reasonable cost it should have incurred a reasonable person, which should have been $56 for a tow, according to the representations of employees of Nelsons Tow Company, and without a $298 Administrative fee serving an unknown purpose, nor the $76 citation for allegedly being illegally parked.

107.    The cost to recover the car on the first day was over $550, based on the excessive storage fees and initial costs, which increased each day more than $50  making it excessive, and causing us to be unable to regain possession.

108.     As a direct result of the Defendants above mentioned conduct, we suffered emotional distress from loss of use of property, and from the shock of the deprivation of a critical piece of property tied into a fundamental right of Plaintiffs to travel and maintain subsistence.

WHEREFORE, Plaintiffs demand relief as hereinafter set forth.

## JURY DEMAND

109.     Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiff prays for relief, as follows:

1.   For general damages according to proof;
2.   For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
3.   For punitive damages and exemplary damages in amounts to be determined according to proof as to all Defendants and DOES 1 through 25 and/or each of them;
4.   For reasonable attorney's fees if any pursuant to 42 U.S.C. §1988;
5.   For cost of suit herein incurred;
6.   Defendant employees of CCSF, $25,000.00 for each offense and reasonable attorney's fees;
7.   For such other and further relief as the Court deems just and proper.

## VERIFICATION

Plaintiffs 2nd Amended Complaint

Plaintiffs/Claimants/Creditors, affirm under penalty of perjury under the laws of the United

States of America, that the foregoing facts are true to the best of our knowledge, and that this

action is filed in good faith to protect life and property, and that we would testify to the validity

thereof before this Court if necessary.


Dated:  July 30, 2021


By:

_____

Jamil Malik Bey - Heir/Creditor/Claimant
In propria persona, sui juris, in solo proprio, and on behalf of
the Immortal Jamil Malik Bey Reversioner Trust in Northwest
Amexem; Authorized Representative for Marimar Cornejo
All rights reserved without prejudice




Marimar Cornejo
Claimant/Plaintiff

Plaintiffs 2nd Amended Complaint