IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIMAR CORNEJO et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JEFFREY TUMLIN et al.,<br><br>　　　　Defendants. | Case No. 20-cv-05813-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |

　　　　In February of 2021, the Court granted in part and dismissed in part motions to dismiss by various defendants in this case, which stems from the towing of pro se Plaintiffs Marimar Cornejo and Jamil Bey's 1998 Toyota Camry in February of 2020. See Order Dismissing (dkt. 32).  The Court dismissed some claims with prejudice—including the state law claims, the Fourth Amendment claim against Defendant the City and County of San Francisco (CCSF), the Fourteenth Amendment claim against all defendants, and the section 1985 claim against Defendants AutoReturn, Alvah, and PG&E.  Id. at 19.  The Court dismissed with leave to amend Plaintiffs' Fourth Amendment claim against Defendants Alvah and P&E, instructing Plaintiffs "to attempt to plausibly allege that said defendants are state actors for the purpose of Section 1983 liability."  Id.  The Court did not dismiss the Fourth Amendment claim against AutoReturn or the Eighth Amendment claim against AutoReturn and CCSF.  Id. at 19 n.8.

　　　　Plaintiffs have now filed a Second Amended Complaint, see SAC, and defendants have filed four new motions to dismiss, see CCSF MTD (dkt. 42); AutoReturn MTD (dkt. 41); Alvah MTD (dkt. 44); PG&E MTD (dkt. 45).  As explained below, the Court finds this matter suitable for resolution without oral argument, pursuant to Local Civil Rule 7-1(b), VACATES the hearing currently set for October 28, 2021, and again GRANTS in part and DENIES in part defendants'

motions.

## I.      LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief may be granted.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting another source).  A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Where the plaintiffs are pro se, the Court has an obligation to construe the pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).  However, the Court may not supply essential elements of a claim that are not pled.  Pena v. Gardner, 976 F.2d 469, 471–72 (9th Cir. 1992).  Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.  Id.

If a court does dismiss a complaint for failure to state a claim, it should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court nevertheless has discretion to deny leave to amend due to "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008)

(alteration in original) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

**II.   DISCUSSION**

This Order pertains to (A) CCSF's motion to dismiss, (B) the AutoReturn Defendants' motion to dismiss, (C) the Alvah Defendants' motion to dismiss, and (D) PG&E's motion to dismiss.

**A.   CCSF Motion**

Defendant CCSF moves to dismiss Plaintiffs' Fourth Amendment claim, and moves to dismiss Defendants Jeffrey Tumlin and the San Francisco Municipal Transportation Agency (SFMTA). See generally CCSF MTD.

**1.   Fourth Amendment**

The Court's February 2021 order dismissed the Fourth Amendment claim against CCSF with prejudice. See Order Dismissing at 19. Res judicata prevents Plaintiffs from bringing the same claim against these same defendants. See Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 713–14 (9th Cir. 2001). The Fourth Amendment claim against CCSF is therefore no longer in the case.

**2.   Tumlin**

CCSF argues that Plaintiffs only sued Tumlin in his official capacity, which is the same as suing the city itself, and so the Court should dismiss Tumlin. CCSF MTD at 5. CCSF is correct that the Complaint's caption names Tumlin in his official capacity. See SAC at 1 "JEFFREY TUMLIN, officially as Director of Transportation of the San Francisco Municipal Transportation agency"). An official-capacity suit is the equivalent of bringing suit against the government itself. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). However, elsewhere in the Complaint, Tumlin is named in both "his individual and official Capacity." See SAC ¶ 6; see also id. ¶¶ 43, 44 (alleging that Tumlin ratified the wrongful action); ¶ 74 ("In addition, Jeffrey Tumlin could have abated the excessive fees . . . but he refused to abate the unconstitutional practice violating his oath of office, and making himself liable in his

3

individual capacity."). CCSF's argument for dismissing the case against Tumlin, premised on Tumlin only being named in his official capacity, fails.

### 3. SFMTA

Although the Complaint names SFMTA as a defendant, see SAC at 1, ¶¶ 5, 7, CCSF argues that SFMTA is not an independent public corporation with the power to sue or be sued. CCSF MTD at 5. The Court agrees. See Vance v. County of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996 ("'Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.'") (quoting Stump v. Gates, 777 F. Supp. 808, 816 (D. Colo. 1991); cf. Hervey v. Estes, 65 F.3d 784, 792 (intergovernmental association is not a municipality or local government and is only subject to suit if the parties that created it "intended to create a separate legal entity."). SFMTA is not a proper defendant in this case and is therefore dismissed.

Accordingly, the Court GRANTS CCSF's motion as to the Fourth Amendment claim and as to all claims against SFMTA, and DENIES CCSF's motion as to Tumlin.[1]

## B.   AutoReturn Motion

The AutoReturn Defendants move to dismiss the Fourth and Eighth Amendment claims. See AutoReturn MTD. The Court previously dismissed without prejudice the Fourth Amendment claim against Defendants PG&E and Alvah for failure to allege state action, and did not dismiss the Fourth Amendment claim against AutoReturn, noting that while AutoReturn had not challenged that claim, it could do so upon amendment. Order Dismissing at 12 n.5. In that same order, the Court held that Plaintiffs' allegation that AutoReturn charged excessive fees was sufficient to state a claim under the Eighth Amendment. Id. at 17, n.6 (total fee listed on AutoReturn's website was $23,340.50).

### 1. State Action

AutoReturn now argues that the Second Amended Complaint fails to state a claim under the Fourth Amendment because AutoReturn is not a state actor. AutoReturn MTD at 4–5. To

---

[1] Plaintiffs are directed to meet and confer with counsel for CCSF as to how best to serve Tumlin in his individual capacity. See CCSF Mot. at 5 n.4.

state a claim under § 1983, a plaintiff must allege that the "person acted under the color of state law when he or she committed the alleged violation." See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987). In the Second Amended Complaint, Plaintiffs allege that AutoReturn towed their car on February 27, 2020. SAC ¶¶ 45 and 47. Plaintiffs further allege that in doing so, AutoReturn took joint action with the state to deprive Plaintiffs of their constitutionally protected privacy interests, id. ¶ 19, that AutoReturn is "clothed with the authority of the state to seize automobiles on behalf of CCSF," and that "the two are intricately entwined in their business dealings," even calling CCSF's facility at 750 7th Street the "City and County of San Francisco Impound Powered by AutoReturn," id. ¶ 20. Plaintiffs allege that this close connection "satisfies the 'symbiotic relations' test of Rendell Baker v. Kohn, 457 U.S. 830, 842–43 (1982)." Id.[2] AutoReturn responds that the fact that "the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function." AutoReturn MTD at 4–5 (quoting Manhattan Comm. Access Corp. v. Halleck, ___ U.S. ___, 139 S. Ct. 1921, 1931–32 (2019)).

While AutoReturn is correct as a general matter that the law does not convert all private actors who do business with the government into state actors—more on this below—AutoReturn is incorrect as to the legal significance of its own role. The Ninth Circuit has held that "a private towing company acting at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws, acts under color of state law for purposes of section 1983." Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1322 (9th Cir. 1982). Thus, in Whitsitt v. Zedlitz, No. 08-CV-01803 JSW, 2012 WL 3070032, at *3 (N.D. Cal. July 27, 2012), where the complaint alleged that a private entity acted pursuant to a conspiracy with the county defendants to seize, tow and sell a vehicle, the district court concluded that the private entity acted under color of law. And in Yan Sui v. Southside Towing, No. SACV 10-01973 JAK (AWJ), 2012 WL 13048510, at *4–5 (C.D. Cal. June 5, 2012), where a tow

---

[2] The SAC includes a number of legal arguments and citations, which the Court need not accept as true.

company acted at the behest of a homeowners' association, and not the police, the district court concluded that there was not state action. Here, where Plaintiffs have alleged that AutoReturn towed Plaintiffs' vehicle "on behalf of CCSF, and does so routinely and regularly," SAC ¶ 20, Plaintiffs have plausibly alleged that AutoReturn is a state actor, see Tarantino v. Syputo, No. C 03-03450 MHP, 2006 WL 1530030, at *7 (N.D. Cal. June 2, 2006) ("towing companies are deemed to be state actors because they tow vehicles in response to orders by law enforcement officials").

### 2. Eighth Amendment

AutoReturn next argues that the Second Amended Complaint fails to state a claim under the Eighth Amendment, because California Vehicle Code section 22851 limits the time that AutoReurn may charge for storing a vehicle to sixty days, and so sixty days' of storage fees is presumptively not excessive. AutoReturn MTD at 5–6. AutoReturn argues: "Despite the total listed on AutoReturn's website, with this limited storage fee, lien fees, and the City's administrative fee, the total charge to Plaintiffs is capped as a matter of law at $4,380.50." Id. at 6. And AutoReturn notes that Plaintiffs would likely benefit from San Francisco regulations that allow for fee waivers and reductions for low income or homeless people. Id. (citing RJN Exs. A, B). Plaintiffs respond: "It's unclear what relevance Defendants['] Exhibit 'A' has to the current circumstances where the subject automobile has been charged the administrative fee of nearly $300, and no one from the SFMTA or AutoReturn has given us notice of intent to waive any cost." Opp'n (dkt. 49) at 17. They add: "Defendants claim they could not charge over $4,380.50 for the towing, but were found charging over $23,000 for the cost to return the subject automobile." Id. at 18.

The Court agrees with Plaintiffs. It matters little that the law provides reasonable protections for Plaintiffs if AutoReturn charges Plaintiffs sums far exceeding what those protections allow. That is what Plaintiffs have alleged. See SAC ¶¶ 75–79. Saying "despite what our website reflects that we are charging people, we are not actually allowed to charge them that much" is not a legal defense. Plaintiffs have stated a claim under the Eighth Amendment.

Accordingly, the Court DENIES AutoReturn's motion.

### C. Alvah Motion

The Alvah Defendants move to dismiss the case against them, asserting that Alvah is not a state actor, that Plaintiffs may lack standing to bring suit, and that the SAC fails to allege facts sufficient to impose individual liability on Defendant Cameron Hale, CEO of Alvah. Alvah MTD.

#### 1. State Action

The Court previously dismissed the Fourth Amendment claim against Alvah, stating that it was "not persuaded that [its role] in this case . . . working on transmission lines and, in connection with that work, being responsible for posting public notices of parking prohibitions—constitute[d] state action." Order Dismissing at 12. In response to that dismissal, the SAC added a number of allegations asserting that Defendant Alvah was a state actor for the purposes of section 1983 liability. See, e.g., SAC ¶¶ 18–19, 23–24, 26–28, 32, 93–94. Plaintiffs allege that Alvah was "clothed with the power of the state" and "acted jointly with Defendant CCSF," and that CCSF transferred "police powers" to PG&E, and, by extension, PG&E's subcontractor, Alvah, in permitting them to place parking signs and initiate the seizure of Plaintiffs' car. See id. ¶¶ 23–24. Alvah argues that Plaintiffs' new allegations about state action largely consist of legal conclusions, and are therefore not entitled to the presumption of truth. Alvah MTD at 5–7. And Alvah argues that Plaintiffs' factual allegations do not meet any definition of state action. Id. at 7–1. The Court agrees.

"The United States Supreme Court has articulated four different factors or tests to determine state action," though such tests may just be "different ways of characterizing the necessary fact-bound inquiry." Gorenc v. Salt River Project Agr. Imp. & Power Dist., 869 F.2d 503, 506 (9th Cir. 1989) (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 939 (1982)); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012). These are the nexus test, the joint action test, the public function doctrine, and the state compulsion test. Id. at 506–09. Plaintiffs do not invoke the state compulsion test, and none of the other three fit.

The nexus test "asks 'whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so the action of the latter may be fairly treated as that of the state itself.'" Id. at 506 (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351

7

(1974)). In Jackson, where a privately owned electric company that was subject to "extensive state regulation" terminated someone's electricity, the Supreme Curt found that the nexus test had not been met: "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." 419 U.S. at 453. That was so even though the electric company was a monopoly, it performed an "essential public service," and the state authorized the termination practice. Id. at 454–55.[3] Here, Alvah performed construction work and posted (or failed to properly post) no-parking signs, but did not itself cite or tow Plaintiffs' vehicle. See Opp'n at 10 (conceding that neither PG&E not Alvah employees wrote citations, but asserting that both could cause SFMTA employees to appear and either cite or tow cars). Alvah did not exercise any of the state's exclusive powers, let alone those powers actually at issue in this case.

The joint action tests asks "whether the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." Gorenc, 869 F.2d at 507. "[A] bare allegation of such joint action will not overcome a motion to dismiss." DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000). "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." Blum v. Yaretsky, 457 U.S. 991, 1004–05 (1982). This circuit has required "substantial cooperation" or that the private entity's and government's actions be "inextricably intertwined." Brunette v. Humane Society of Ventura Cnty., 294 F.3d 1205, 1212 (9th Cir. 2002).[4] Here, while CCSF issued a permit that allowed PG&E and Alvah to do their work, there

---

[3] See also id. at 457 ("All of petitioner's arguments taken together show no more than that Metropolitan was a heavily regulated, privately owned utility, enjoying at least a partial monopoly in the providing of electrical service within its territory, and that it elected to terminate service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law. Under our decision this is not sufficient to connect the State of Pennsylvania with respondent's action so as to make the latter's conduct attributable to the State. . . .").
[4] Plaintiffs' argument that "Defendants played a material role in putting the Subject Automobile into possession of [the tow company"] and . . . without Defendants playing that role, the Seizure never would have occurred," see Opp'n at 9, is simply not the standard for joint action.

is no suggestion that CCSF exercises coercive power over how Alvah does its work, or that Alvah and CCSF are in any way interdependent. Even if Alvah could call SFMTA employees to alert them to illegally parked cars, see Opp'n at 10, it does not follow that SFMTA was beholden to Alvah or vice versa. See Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (private business was not acting under color of state law for § 1983 purposes merely because it had a permit and summoned police). In Brunette, where each party acted independently and did not assist one another with their separate tasks, the circuit held that there was no joint action. 294 F.3d at 1212–13. Here, as in Brunette, Alvah and the state worked independently and CCSF did not exert coercive power over Alvah's actions.[5]

The public function test recognizes that the government granting a license to a private entity does not convert that private entity into a state actor, unless the private entity is performing a traditional and exclusive public function. See Manhattan Comm. Access Corp., 139 S. Ct. at 1932. Examples include conducting elections, owning bridges, ferries or turnpikes, and running a company town. See Gorenc, 869 F.2d at 508 (collecting cases). While towing someone's car might be a traditional and exclusive government function, doing construction work and hanging up signs consistent with that construction work are not. Cf. Brunette, 294 F.3d at 1214 ("Media did not engage in any law enforcement activity during the search of her ranch"). This is so even where the private actor's activities are undertaken pursuant to a government license or contract. See Polk v. Yee, 481 F. Supp. 3d 1060, 1068 (E. D. Cal. 2020) (citing Manhattan Comm. Access Corp., 139 S. Ct. at 1931). CCSF enlisted Alvah to do construction work, but it did not turn over complete control of its streets to Alvah. Just as "a street festival organizer given non-exclusive powers over a traditional public forum does not . . . become a State actor when the State maintains the ultimate power to regulate activities in the forum," Lee v. Katz, 276 F.3d 550, 556 (9th Cir. 2002) (citing Lansing v. City of Memphis, 202 F.3d 821, 828–29 (6th Cir. 2000)), Alvah's activities did not convert it into a state actor.

---

[5] The Brunette court also recognized a "symbiotic relationship test," which it called a "derivative of the joint action test." Id. at 1210. For the same reasons the joint action test is not met here, the symbiotic relationship test is also not met.

Plaintiffs have failed to adequately allege that Alvah is a state actor, and therefore the Fourth Amendment claim against Alvah fails.

### 2. Standing

The Alvah Defendants next argue that Plaintiffs may not even have standing to bring suit, as they never actually say that they own the subject vehicle. Alvah MTD at 11 (citing SAC ¶¶ 18, 33) (referring to Plaintiff Bey's "legal duty to protect the subject Automobile."). But Plaintiffs respond that the SAC claims a right to immediate possession of the car. See Opp'n at 15 (citing SAC ¶¶ 21, 36, 57, 63, 69, 78). Indeed, the SAC refers to "Our seized automobile," SAC ¶ 21, and "the deprivation of our property," id. ¶ 57. The Court "must . . . draw all reasonable inferences in favor of the nonmoving party." Usher, 828 F.2d at 561. It is a reasonable inference that Plaintiffs own the car.

### 3. Individual Liability Against Hale

The Alvah Defendants also argue that the SAC does not allege sufficient facts against Defendant Hale to impose liability. Alvah MTD at 12–13. This is correct. "[A] corporate officer does not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done." Caroline Cas. Is. Co. v. RDD, Inc., 685 F. Supp. 2d 1052, 1058 (N.D. Cal. 2010). A complaint must allege that each individual, through his own actions, violated the Constitution. Iqbal, 556 U.S. at 676. The SAC merely alleges that—rather than Hale admitting that he made a mistake in towing Plaintiffs' car—Hale's secretary sent Plaintiffs an intemperate email, and "[t]herefore, Cameron Hale ratified an unconstitutional act." SAC ¶¶ 83–84. That is not an allegation that Hale participated in the alleged wrongful act. The SAC does not adequately allege that any of the Alvah Defendants are state actors, but even if they were, "private parties who act under color of state law may not be held liable on the basis of respondeat superior." See Josfan v. Indochine, No. CV 09-07904 AHM (PLAx), 2012 WL 12906356, at *7 (C.D. Cal. Jan. 13, 2012) ("'Lower courts have consistently ruled that private parties who act under color of state law may not be held liable on the basis of respondeat superior.'") (quoting Martin A. Schwartz, Section 1983 Litigation Claims and Defenses § 6.04 (4th ed. 2003)).

The SAC fails to state a claim against Defendant Hale.

Accordingly, the Court GRANTS Alvah's motion, although not on the basis of standing.

### D.     PG&E Motion

Finally, Defendant PG&E argues that Plaintiffs' Fourth Amendment claim against PG&E fails because PG&E is not a state actor. PG&E MTD. The Court previously dismissed the Fourth Amendment claim against PG&E, stating that it was "not persuaded that [its role] in this case . . . hiring a subcontractor to work on transmission lines . . . constitute[d] state action." Order Dismissing at 12. In response to that dismissal, the SAC added a number of allegations asserting that Defendant PG&E was a state actor for the purposes of section 1983 liability. See, e.g., SAC ¶¶ 18–19, 23–28, 32, 93–94. Plaintiffs allege that PG&E was "clothed with the power of the state" and "acted jointly with Defendant CCSF," and that CCSF transferred "police powers" to PG&E to place "no parking" signs and to act jointly with CCSF to seize Plaintiffs' car. See id. ¶¶ 23–24. Like Alvah, PG&E argues that Plaintiffs' factual allegations do not meet any definition of state action. See PG&E MTD at 5–10.

The Court agrees. The Complaint alleges that PG&E played a role that was nearly indistinguishable from Alvah's role. See SAC ¶ 24. Although the Complaint identifies PG&E as CCSF's "permittee," allowing PG&E "a privilege to place no-parking signs," it also alleges that "PG&E transferred this power to its subcontractor Alvah as [its] agent," making Alvah, too, "a state actor." Id. ¶ 25; see also id. ¶ 28 ("Defendants PG&E and Alvah were delegated power by CCSF to place no parking signs restricting public access to the street, and their employees initiated the towing"). For the same reasons that Alvah is not a state actor, PG&E is not a state actor.[6] PG&E's authority to hang no-parking signs and its ability to call SFMTA when cars are parked in the no-parking zone is not a police power and does not convert PG&E into a state actor. None of

---

[6] Plaintiffs recognize that the two companies' fates are tied in this regard, addressing them together in their opposition brief. See, e.g., Opp'n at 4 ("PG&E & Alvah Defendants"); id. ("Defendants do not believe their conduct constituted state action"); id. at 7 ("PG&E and Alvah Defendants do not believe a utility company is a state actor"); id. at 8 ("the delegation in Defendants['] permit of the aforementioned public transportation duties . . . are contractual duties imposed on PG&E and its agent Alvah Contractors by CCSF"); id. at 10 ("Although it's true that PG&E nor Alvah employees write parking citations on behalf of SFMTA. . .").

the tests discussed above are met. See Gorenc, 869 F.2d at 506–09; see also PG&E Reply (dkt. 52) at 1 (rejecting argument that "obtaining a temporary occupancy permit to perform work on a public street, as utilities and contractors do virtually every day of the year in San Francisco, and consequently directing traffic around and excluding vehicles from parking in the work area, constitutes an exercise of 'state police power' and renders the permit holder a state actor.").

Accordingly, the Court GRANTS PG&E's motion.

### III.     CONCLUSION

For the foregoing reasons, the Court (1) GRANTS CCSF's motion as to the Fourth Amendment claim and as to all claims against SFMTA, and DENIES CCSF's motion as to Tumlin; (2) DENIES AutoReturn's motion; (3) GRANTS Alvah's motion; and (4) GRANTS PG&E's motion. All of the dismissed claims are dismissed with prejudice. See Leadsinger, 512 F.3d at 532 (futility of amendment).

**IT IS SO ORDERED.**

Dated: October _20___, 2021

CHARLES R. BREYER
United States District Judge