IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIMAR CORNEJO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JEFFREY TUMLIN, et al.,<br><br>Defendants. | Case No. 20-cv-05813-CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKTS. 84 & 86) AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT (DKT. 97)** |

This lawsuit stems from the towing of pro se Plaintiffs Marimar Cornejo and Jamil Bey's (collectively, "Plaintiffs") 1998 Toyota Camry in February of 2020. See Compl. (dkt. 1). Initially, there were eleven named defendants and eleven constitutional and tort claims in the case. See Compl.; FAC (dkt. 20) ¶¶ 103–86. Now all that remains are four section 1983 claims: (1) a Fourth Amendment claim against Tegsco LLC (d/b/a San Francisco AutoReturn LLC) ("AutoReturn"), Nelsons Tow, and Dan Scanlan (collectively, the "AutoReturn Defendants"), (2) an Eighth Amendment claim against the AutoReturn Defendants, (3) an Eighth Amendment claim against the City and County of San Francisco ("CCSF") and Jeffery Tumlin (collectively, "City Defendants"), and (4) a Fourth Amendment claim against Tumlin, see Order on MTD (dkt. 32); Order on MTD SAC (dkt. 54).

Defendants have moved for summary judgment on all claims. See City MSJ (dkt. 84), AutoReturn MSJ (dkt. 86). Plaintiffs oppose the AutoReturn Defendants' motion as to the Fourth Amendment claim and bring a cross-motion for summary judgment as to the Eighth Amendment claim. Pl. Mot. (dkt. 97). For the reasons stated below, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motions as to all claims.

United States District Court
Northern District of California

# I.     BACKGROUND

## A.     Towing

On February 27, 2020, at approximately 4:00 p.m., Plaintiffs parked their Toyota Camry on Ellis Street near Powell Street.  Kwan Decl. Ex. 1 (dkt. 84-2) at 19:10–11, 25:17–26:6, referencing Ex. 4 to Pl. Bey's deposition.  After 8:00 p.m., the San Francisco Municipal Transportation Agency ("SFMTA") ticketed the vehicle.  Deir Decl. Ex. B (dkt. 86-1).  At approximately 9:00 p.m., Nelsons Tow Company ("Nelsons Tow") towed the vehicle at the direction of SFMTA because the vehicle was parked in a construction zone where Pacific Gas and Electric Company's ("PG&E") subcontractor, Alvah Contractors, Inc. ("Alvah"), was performing work on PG&E's transmission lines.  Kwan Decl. Ex. 1 at 77:11–19, Deir Decl. ¶¶ 3–4.   PG&E had a permit for a No Stopping construction zone along Ellis Street, from Market Street to Powell Street, which was effective between February 23, 2020 and February 29, 2020, between 7:00 p.m. and 6:00 a.m.  City RJN (dkt. 85).[1]  The parties disagree whether appropriate "No Stopping" signage was posted in

---

[1] City Defendants request judicial notice of a copy of the temporary occupancy permit issued to PG&E as found on the San Francisco Department of Public Works, Infrastructure Design and Construction Division, Bureau of Street-Use & Mapping website.  City RJN Ex. A.  Previously, this Court judicially noticed the existence of the temporary occupancy permit, but not the truth of the facts recited therein.  See Order on MTD at 7.  The Court previously explained:

> Here, although the exhibits are posted on San Francisco Public Work's website, and therefore a government website, the facts within the documents are still subject to reasonable dispute. The posted documents demonstrate that a permit was issued and that tow-away signs were posted for the subject construction zone, however, the exhibits fail to demonstrate that these tow-away signs were posted in the area from which Plaintiffs' car was actually towed. See Codog Decl. at 9–10; Ex. B. These are disputed facts. Thus, this Court takes judicial notice of the existence of the documents, but not of the truth of the facts recited therein. See Lee, 250 F.3d at 690.

Id.

Plaintiffs have since admitted that their vehicle was parked on Ellis Street near Powell Street.  Kwan Decl. Ex. A at 25:17–26:6, referencing Ex. 4 to Pl. Bey's deposition, and the occupancy permit covered Ellis Street, from Market Street to Powell Street.  The only remaining fact in dispute is whether the "No Stopping" signs were posted in the area at the time that Plaintiffs parked their vehicle.  Accordingly, the Court grants the City

the area from which Plaintiffs' vehicle was towed at the time Plaintiffs parked the vehicle.
Bey Decl. ¶ 13 (dkt. 97-1) and Ex. A–D; City RJN Ex. A; City MSJ at 4 (citing dkt. 23-1,
Ex. B).   However, the parties agree that at the time the vehicle was towed, the "No
Stopping" signs were posted.  Kwan Decl. Ex. 1 at 77:4–25, 78:1–18; Rosenbaum Decl.
Ex. A at 78:1–18; Bey Decl. Ex. A–D.

After the vehicle was towed, the AutoReturn Defendants stored it, and it remains
stored at AutoReturn's long-term storage facility.  Deir Decl. ¶ 6.  As of February 8, 2021,
AutoReturn's website reflected that Plaintiffs owed $23,340.50 in fees.  Bey Decl. Ex. L
(showing a total fee of $20,033.00); see Order on MTD at 17, n.6 (noting that the total fees
listed on AutoReturn's website was $23,340.50 as of February 8, 2021).  The AutoReturn
website has since been updated to reflect a far lower amount of fees owed—$4,380.50—
which accounts for the 60-day statutory limit[2] on storage fees for towed vehicles.  Kwan
Decl. ¶ 4; Deir Decl. ¶¶ 8–9.

### B.    Procedural History

On August 17, 2020, Ms. Cornejo filed a complaint against Alvah, CCSF, Cameron
A. Hale, Nelsons Tow, PG&E, AutoReturn, SFMTA, Dan Scanlan, and Jeffrey Tumlin,
alleging numerous violations of her constitutional rights under 42 U.S.C. § 1983, as well as
claims for a violation of California Civil Code § 52.1, intentional infliction of emotional
distress or negligent infliction of emotional distress, negligence, conversion, and trespass.
See Compl.

Following the complaint, Ms. Cornejo filed an ex parte application for a temporary

---

Defendants' request for judicial notice.  City RJN Ex. A.
[2] California Vehicle Code section 22851(a)(1) limits the storage fee to a maximum of 60
days.  In relevant part, the statute provides that "[w]henever a vehicle has been removed to
a garage under this chapter and the keeper of the garage has received the notice or notices
as provided herein, the keeper shall have a lien dependent upon possession for his or her
compensation for towage and for caring for and keeping safe the vehicle not exceeding 60
days."  Cal. Veh. Code § 22851(a)(1) (emphasis added); see also Deir Decl. ¶ 8 ("[T]he
City and AutoReturn are restricted by the California Vehicle Code from charging for more
than 60 days of storage for [Plaintiffs'] vehicle.").  At the time this lawsuit was filed, the
AutoReturn website "show[ed] the amount [owed] if there were no 60-day maximum."
Deir Decl. ¶ 9.  Now, the website shows the maximum amount the City and AutoReturn
Defendants could charge: $4,380.50.  Kwan Decl. ¶ 4.

United States District Court
Northern District of California

restraining order to enjoin Defendants from depriving Ms. Cornejo of her vehicle until the final resolution of the case, and for damages for Ms. Cornejo's lost use of her vehicle.  See App. for TRO (dkt. 2).  This Court denied the application for a TRO because Plaintiff could not demonstrate a likelihood of irreparable harm.  See Order re: TRO (dkt. 7).  Thereafter, PG&E, CCSF, and Alvah, respectively, filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See generally MTDs (dkts. 14–15, 17).  After missing her deadlines to oppose the PG&E motion and the CCSF motion, Ms. Cornejo filed a motion for administrative relief to extend time to amend her complaint, which this Court granted for good cause.  See Admin. Mot. (dkt. 18); see also Order re: Admin. Mot. (dkt. 19).

On November 22, 2020, Ms. Cornejo filed her First Amended Complaint ("FAC"), adding Jamil Bey ("Mr. Bey") as another plaintiff.[3]  FAC ¶¶ 30–37.

### 1.    Motions to Dismiss FAC

All Defendants moved to dismiss the FAC in December of 2020.  See AutoReturn MTD (dkt. 21); Alvah MTD (dkt. 22); PG&E MTD (dkt. 23); CCSF MTD (dkt. 24).  In February of 2021, the Court granted in part and denied in part the motions to dismiss by various defendants.  See Order on MTD.  The Court dismissed some claims with prejudice—including the state law claims, the Fourth Amendment claim against Defendant CCSF, the Fourteenth Amendment claim against all defendants, and the section 1985 claim against Defendants AutoReturn, Alvah, and PG&E.  Id. at 19.  The Court dismissed with leave to amend Plaintiffs' Fourth Amendment claim against Defendants Alvah and PG&E.  Id.  The Court did not dismiss the Fourth Amendment claim against AutoReturn or the Eighth Amendment claim against the AutoReturn Defendants and the City Defendants.  Id.

---

[3] Additionally, the FAC named the following defendants: (1) CCSF; (2) SFMTA; (3) Jeffrey Tumlin, SFMTA's Director, in his official capacity; (4) AutoReturn; (5) John Wicker, AutoReturn's CEO, in his official capacity; (6) Dan Scanlan, AutoReturn's Vice President, in his individual and official capacities; (7) Nelsons Tow;  (8) Alvah; (9) Cameron A. Hale, Alvah's President, in his individual and official capacities; (10) PG&E; and (11) Bill Johnson, PG&E's Director, in his official capacity.

United States District Court
Northern District of California

1    at 19 n.8.[4]

2    **2.     Motions to Dismiss SAC**

3       In July of 2021, Plaintiffs filed a Second Amended Complaint, see SAC (dkt. 40),

4    and defendants filed four new motions to dismiss, see CCSF MTD SAC (dkt. 42);

5    AutoReturn MTD SAC (dkt. 41); Alvah MTD SAC (dkt. 44); PG&E MTD SAC (dkt. 45).

6    The Court granted in part and denied in part the defendants' motions.  See Order on MTD

7    SAC.  The only remaining claims are the Fourth Amendment claim against the AutoReturn

8    Defendants and Tumlin, and the Eighth Amendment claim against the AutoReturn

9    Defendants and the City Defendants.  Id. at 12.

10    **3.     Motions for Summary Judgment**

11       Defendants now move for summary judgment as to all claims.  See City MSJ,;

12    AutoReturn MSJ.  Plaintiffs oppose the AutoReturn Defendants' motion for summary

13    judgment on the Fourth Amendment claim on the grounds that there is a genuine dispute as

14    to whether a "No Stopping" sign was posted when Plaintiffs parked their vehicle.  See Pl.

15    Mot. at 4–5.  In the alternative, Plaintiffs ask the Court to grant summary judgment in their

16    favor on the Fourth Amendment claim against the AutoReturn and the City Defendants.

17    Pl. Mot. at 16–17.[5]

18       Additionally, Plaintiffs bring a cross-motion for summary judgment on the Eighth

19    Amendment claim against the AutoReturn and the City Defendants.  Id. at 11.

20    **II.    LEGAL STANDARD**

21       Summary judgment is proper where the pleadings, discovery, and affidavits show

22

23    [4] The Court noted that while AutoReturn had not challenged that claim, it could do so upon
24    amendment.  Order on MTD at 12 n.5.  In that same order, the Court held that Plaintiffs'
allegation that AutoReturn Defendants and City Defendants charged excessive fees was
sufficient to state a claim under the Eighth Amendment.  Id. at 17, n.6 (total fee listed on
25    AutoReturn's website was $23,340.50).
26    [5] The Court's February 2021 order dismissed the Fourth Amendment claim against CCSF
with prejudice.  See Order on MTD SAC at 19.  Res judicata prevents Plaintiffs from
bringing the same claim against these same defendants.  See Owens v. Kaiser Found.
27    Health Plan, Inc., 244 F.3d 708, 713–14 (9th Cir. 2001).  To the extent that Plaintiffs seek
judgment on the Fourth Amendment claim against CCSF, that claim is no longer in the
case.  However, the Fourth Amendment claim against Tumlin remains in the case.  See
28    Order on MTD SAC at 4.

1   that there is "no genuine dispute as to any material fact and the [moving] party is entitled

2   to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may

3   affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

4   (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

5   reasonable jury to return a verdict for the nonmoving party. Id.

6          The moving party for summary judgment bears the initial burden of identifying

7   those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a

8   genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where

9   the moving party will have the burden of proof on an issue at trial, it must affirmatively

10  demonstrate that no reasonable trier of fact could find other than for the moving party. Id.

11  But on an issue for which the opposing party will have the burden of proof at trial, the

12  moving party need only point out "that there is an absence of evidence to support the

13  nonmoving party's case." Id.

14         Once the moving party meets its initial burden, the nonmoving party must go

15  beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by

16  "citing to specific parts of material in the record" or "showing that the materials cited do

17  not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A

18  triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving

19  party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the

20  nonmoving party fails to make this showing, "the moving party is entitled to judgment as a

21  matter of law." Celotex, 477 U.S. at 323.

22         It is not a court's task "to scour the record in search of a genuine issue of triable

23  fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996) (internal citation omitted).

24  Rather, a court is entitled to rely on the nonmoving party to "identify with reasonable

25  particularity the evidence that precludes summary judgment." See id. When deciding a

26  summary judgment motion, a court must view the evidence in the light most favorable to

27  the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at

28  255; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

United States District Court
Northern District of California

Finally, when parties file cross-motions for summary judgment, the court must consider all of the evidence submitted in support of the motions to evaluate whether a genuine dispute of material fact precludes summary judgment for either party.  The Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

## III.   DISCUSSION

The AutoReturn Defendants, City Defendants, and Plaintiffs move for summary judgment on the Eighth Amendment claim.  See AutoReturn MSJ; City MSJ; Pl. Mot. at 11.  The AutoReturn Defendants move for summary judgment on the Fourth Amendment claim.  See generally AutoReturn MSJ.  This order addresses the issues in the following order: (A) the Eighth Amendment claim against the City Defendants, (B) the Fourth Amendment claim against Tumlin, (C) the Fourth Amendment claim against the AutoReturn Defendants, and (D) the Eighth Amendment claim against the AutoReturn Defendants.

### A.   The Eighth Amendment Claim Against the City Defendants

Plaintiffs claim that the City Defendants charged them an "excessive fine and penalty" in violation of the Eighth Amendment.  Pl. Mot. at 11.  Plaintiffs argue that both the $23,340.50 fee listed on AutoReturn's website and the updated $4,380.50 fee are excessive and violate the Eighth Amendment.  Pl. Mot. at 3.  The City Defendants contend that: (1) there was no Eighth Amendment violation as a matter of law, see generally City MSJ, and (2) they cannot be held liable even if the Court considers the $23,340.50 fee, see generally City Reply (dkt. 99).

The Court analyzes each argument below and concludes that: (1) the $4,380.50 fee is not grossly disproportionate under the Eighth Amendment, (2) CCSF cannot be held liable under the Eighth Amendment for the $23,340.50 fee, and (3) Tumlin cannot be held liable under the Eighth Amendment for the $23,340.50 fee.

#### 1.   Excessive Fines Clause

The Eighth Amendment's Excessive Fines clause "limits the government's power to

extract payments, whether in cash or in kind, 'as punishment for some offense.'" <u>Austin v. United States</u>, 509 U.S. 602, 609–10 (1993) (quoting <u>Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 265 (1989)) (emphasis removed). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." <u>United States v. Bajakajian</u>, 524 U.S. 321, 334 (1998). A punitive forfeiture, which can include a civil penalty, "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense." <u>Id.</u> The Ninth Circuit has held that this applies to municipal fines as well. <u>Pimentel v. City of Los Angeles</u>, 974 F.3d 917, 922 (9th Cir. 2020).

The Court considers four factors to determine whether a fine is grossly disproportionate to the underlying offense: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." <u>Pimentel</u>, 974 F.3d at 921

### a.    $4,380.50 Fee

First, the Court addresses whether the $4,380.50 fee is grossly disproportionate under the Eighth Amendment.

### i.    Nature and Extent of the Underlying Offense

In assessing the first factor, "[c]ourts typically look to the violator's culpability." <u>Pimentel</u>, 974 F.3d at 922. Culpability increases if the violation "involved reckless behavior." <u>Id.</u> "So if culpability is high or behavior reckless, the nature and extent of the underlying violation is more significant. Conversely, if culpability is low, the nature and extent of the violation is minimal." <u>Id.</u> Further, "[e]ven if the underlying violation is minor, violators may still be culpable." <u>Id.</u> at 923.

Defendants make two arguments on this point. First, Defendants argue that Plaintiffs are culpable because "they parked their vehicle . . . without making any payment, for a number of hours in a No Stopping zone," in violation of San Francisco Transportation

United States District Court
Northern District of California

Code 7.2.46.  City MSJ at 10; City Reply at 5.  The Court agrees.  There is no factual dispute that Plaintiffs violated San Francisco Transportation Code 7.2.46, which prohibits parking in an area authorized by the SFMTA for any public or private construction work.[6] The evidence in the record shows that on the day of the tow, PG&E had a valid occupancy permit for a "No Stopping" construction zone between 7 p.m. and 6 a.m. that covered Ellis Street, from Market Street to Powell Street.  City RJN, Ex. A.  Plaintiffs have also admitted that they parked their vehicle at Ellis Street near Powell Street—an area covered by the occupancy permit—between 4:00 p.m. and 11:00 p.m.  Kwan Decl. Ex. A at 19:4–23.  Plaintiffs' vehicle was consequently ticketed and towed around 8:46 p.m., within PG&E's permit hours.  Deir Decl. ¶ 4, Ex. B (tow slip).

Plaintiffs note that there is a dispute about whether a "No Stopping" sign was posted in the area <u>at the time Plaintiffs parked their vehicle</u>.  Pl. Mot. at 4.  Viewing the evidence in a light most favorable to Plaintiffs, a reasonable juror could conclude that Plaintiffs' actions were benign because Plaintiffs were unaware that they were parking in a "No Parking" zone.  However, even "benign actions may still result in some non-minimal degree of culpability."  <u>Pimentel</u>, 974 F.3d at 923.  Even if Plaintiffs were unaware that they were parking in a "No Stopping" zone, there is no factual dispute that by remaining parked on Ellis Street past 7:00 p.m., Plaintiffs violated San Francisco Transportation Code section 7.2.46.  <u>See</u> <u>Towers v. City of Chicago</u>, 173 F.3d 619, 625–26 (7th Cir. 1999) (rejecting "the notion that plaintiffs must be considered completely lacking in culpability," even if they were unaware that their vehicle was used to transport illegal guns or drugs).  Thus, Plaintiffs' lack of notice is not relevant to the nature of the underlying offense.

Second, Defendants argue that Plaintiffs are culpable because they "purposefully chose not to pursue the administrative hearing process, which resulted in increased storage fees."  City MSJ at 10; City Reply at 6.  The Court agrees because, "while negligent or

---

[6] The precise language of San Francisco Transportation Code Sec. 7.2.46 states that it is prohibited: "[t]o violate any temporary Parking or traffic restriction authorized by the SFMTA for any public or private construction work, or that is posted pursuant to Section 3.4."

reckless parking violations themselves may not entail a great degree of culpability," Plaintiffs' refusal to address the violation via an administrative appeal—which provides a process by which vehicle owners who believe their vehicle was illegitimately towed can challenge fees—weighs in favor of the City Defendants.  See Tsinberg v. City of New York, No. 20 CIV. 749 (PAE), 2021 WL 1146942, at *7 (S.D.N.Y. Mar. 25, 2021), judgment entered, No. 20 CIVIL 749 (PAE), 2021 WL 1167921 (S.D.N.Y. Mar. 25, 2021). Plaintiff Bey admits that he chose not to pursue an administrative appeal for the return of his vehicle, or a fee waiver, due in part to problems with SFMTA's appeal system.  Kwan Decl. Ex. A at 52:19–53:8 ("[CCSF] pays the hearing officer, and, therefore . . . there's a conflict of interest, which is detrimental to my ability to receive a fair hearing.").  An administrative hearing could have prevented Plaintiffs' fees from accumulating, and Plaintiffs chose not to pursue one.  Id.; Rosales Decl. ¶ 15 (dkt. 84-4); Kwan Decl. Ex. B. Even though Plaintiffs were not required to exhaust administrative rights in order to bring an action under section 1983, their decision to sidestep the administrative process—a process which could have mitigated the accumulation of storage fees—weighs in the City Defendants' favor.

Plaintiffs are therefore culpable because there is no factual dispute that they both violated San Francisco Transportation Code section 7.2.46 and chose not to pursue administrative remedies.  However, like Pimentel, the Court concludes that Plaintiffs' "culpability is low because the underlying parking violation is minor," and finds that "the nature and extent of [Plaintiffs'] violations" are "minimal but not de minimis."  See 974 F.3d at 924.

ii.     **Whether the Underlying Offense Relates to Other Illegal Activities and Whether Other Penalties May be Imposed for the Violation**

There is no information in the record showing whether the underlying offense— parking in a "No Parking" zone—relates to other illegal activities (the second factor) or whether alternative penalties may be imposed instead of the $4,380.50 fee (the third factor).  Nor do the parties address the second and third factors.  See generally City MSJ;

1    Pl. Mot.  Accordingly, these factors do not help the Court's analysis.  See Pimentel, 974

2    F.3d at 923.

3                        iii.    **Extent of the Harm Caused by the Violation**

4           In assessing the fourth factor, courts "must determine the extent of the harm caused

5    by the violation."  Pimentel, 974 F.3d at 923.  "The most obvious and simple way to assess

6    [the fourth] factor is to observe the monetary harm resulting from the violation."  Id.  The

7    "amount in forfeiture must bear some relationship to the gravity of the offense that it is

8    designated to punish."  Bajakajian, 524 U.S. at 334 (emphasis added).  Courts may also

9    consider non-monetary harms including "how the violation erodes the government's

10   purposes for proscribing the conduct."  Id.

11          It is undisputed that the fees that Plaintiffs incurred serve a remedial purpose and

12   that the City Defendants would suffer a monetary harm if they were unable to recover the

13   costs associated with the tow.  The City Defendants admit that "[CCSF] has high

14   administrative and storage fees associated with its tow program," but assert that such fees

15   "are rationally and legitimately related to compensating the City for its tow fees."  City

16   MSJ at 9.  The evidence supports this argument.  The fees assessed for Plaintiffs' violation

17   were part of the SFMTA schedule of fees for towing, Rosales Decl. Ex. A, which is

18   "approved by the SFMTA Board and is based on the actual costs SFMTA" tow program

19   incurs, id. ¶¶ 5–6.[7]

20          Plaintiffs incurred a $4,380.50 fee for the violation, which comprises:

21   •   City Administrative Fee: $298.75.  Rosales Decl. Ex. A.  "This is a cost-recovery
         fee for work performed by city staff, including Parking Control Offices . . . dispatch
22       center duties, officer patrolling, citing, and authorizing removal of vehicles . . ."  Id.
23       at ¶ 8.  This fee is calculated based on the number of tows the prior year.  Id. ¶ 9.

24   •   Contractor TEGSCO, LLC Tow Fee: $238.25.  Id. Ex. A.  This is a fee related to
         AutoReturn's annual management fee for its towing services.  Id. ¶ 10.  This fee is
25       "calculated by taking the total management fee divided by the number of towing
26       incidents the year prior."  Id.

27   _____

28   [7] Plaintiffs do not challenge the basis for these calculations.

- <u>Lien Fees</u>: $70.  <u>Id.</u> Ex. A.  These fees are permitted by California Vehicle Code section 22851.12 and California Civil Code section 3074.  <u>Id.</u> ¶ 11.

- <u>Transfer Fee</u>: $33.75.  <u>Id.</u> Ex. A.  This fee compensates the City's costs of transferring the towed vehicle to a long-term facility.  <u>Id.</u> ¶ 12.

- <u>Daily Storage Fees</u>: $3,739.75.  <u>Id.</u> ¶ 13.  This fee is calculated at "$52.25 for the first day, and $62.50 per day after the first day," with a limit at 60 days.  <u>Id.</u>; <u>see also</u> California Vehicle Code section 22851 (60-day cap).  These fees "compensate the City for the rent paid to the landlord for the property where towed vehicles are towed."  Rosales Decl. ¶ 13.  "The daily storage fee is determined by dividing the total rent paid by SFMTA for impound facilities in the previous year by the combined total number of days each vehicle was stored in the previous year."  <u>Id.</u>

Of the $4,380.50 owed, $589.25 was for the violation and $3,687.50 was incurred in storage fees.  Rosales Decl. Ex. A.  As in <u>Pimentel</u>, the Court finds that "[w]hile a parking violation is not a serious offense," the initial $589.25 fee was "not so large, either, and likely deters violations."  <u>See</u> 974 F.3d at 924.  The same is true of the subsequent transfer and storage fees.  When Plaintiffs were unable to provide proof of vehicle registration, Deir Decl. ¶ 6, AutoReturn stored the vehicle pursuant to its contract with CCSF and California Vehicle Code section 22850.3, <u>id.</u> Ex. A at appendix A, section J.4 and J.5; <u>see</u> California Vehicle Code section 22850.3 ("A vehicle placed in storage pursuant to Section 22850 shall be released to the owner" only if the owner provides "satisfactory proof of current vehicle registration.").  This transformed the initial $589 fee into a $4,380.50 fee.

The Court further notes that Plaintiffs chose not to pursue administrative remedies—which may have prevented the fees from accumulating—and that Plaintiffs never provided proof of their vehicle registration, as required by California Vehicle Code section 22850.3 for release of their vehicle.  Deir Decl. ¶ 6.  Plaintiffs "cannot complain when [they] had control over this time period and yet allowed the penalties to accumulate."  <u>City & Cnty. of San Francisco v. Sainez</u>, 77 Cal. App. 4th 1302, 1316 (2000); <u>see also</u> <u>Ojavan Invs., Ins. v. California Coastal Com.</u>, 54 Cal. App. 4th 373, 398 (1997) ("While the fines total over $9.5 million, the amount is large only because Ojavan Investors violated the Coastal Act 73 times and refused to remedy the violations."); <u>Lent v.</u>

United States District Court
Northern District of California

United States District Court
Northern District of California

California Coastal Com, 62 Cal. App. 5th 812, 857 (2021) ("[C]ourts routinely consider a person's unwillingness to comply with the law when considering whether a fine is excessive under the Eighth Amendment.").  Because it was within Plaintiffs' control to stop the accumulation of storage fees but Plaintiffs chose not to do so, the City Defendants were justified in charging the daily $62.50 storage fee, which recompensed the City Defendants for the rent paid in connection with vehicle storage.  Rosales Decl. Ex. A and ¶¶ 13–14.  The daily storage fee was based on the actual real estate costs and losses associated with the property site where CCSF and AutoReturn store towed vehicles. Rosales Decl. ¶¶ 13–14.  Plaintiffs have offered no evidence to the contrary.  Thus, the $4,380.50 fee bears "some relationship" to the gravity of the offense.  Accord Gutierrez v. City of Long Beach, No. CV 19-9941-DMG (EX), 2021 WL 6752001, at *3 (C.D. Cal. Nov. 15, 2021) (concluding that a $4,625 property lien was not grossly disproportionate).

Additionally, the City Defendants would suffer non-monetary harms if the City's tow program was unable to tow vehicles that are that are blocking construction zones because the government has a strong interest in keeping streets clear from obstructions, and safe for public use.  "Towing helps maximize on-street parking, manage traffic congestions, and maintain clean, safe and functional streets." Rosales Decl. ¶ 3.  The Court agrees with the City Defendants that there is "some relationship" between the CCSF's tow program and the public interest in keeping streets clear of obstructions and deterring bad parking behavior.  City MSJ at 15– 16[8]; see Pimentel, 974 F.3d at 924 ("there is no real dispute that the City is harmed because overstaying parking meters leads

---

[8] Plaintiffs argue that the City Defendants have admitted that they "use the excessive tow fees as a method to deter bad parking behavior" and thus, "the fees are punitive in nature[,] satisfying the core element" of an Eighth Amendment claim.  Pl. Mot. at 7.  The Eighth Amendment prohibits the government from extracting payments as punishment.  Austin, 509 U.S. at 609–10.  However, a fee can serve a deterrent function.  See Pimentel, 974 F.3d at 924 (stating that courts may consider the ordinance's deterrent function so long as the fine is not "grossly out of proportion to the activity the City is seeking to deter."); see also Towers, 173 F.3d at 625–26 ("[T]he City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function [] . . . The $500 fine imposed in this case is large enough to function as a deterrent, but it is not so large as to be grossly out of proportion to the activity that the City is seeking to deter.").

United States District Court
Northern District of California

to increased congestion and impedes traffic flow."); cf. Fitzpatrick v. City of Los Angeles, No. CV 21-6841 JGB (SPX), 2023 WL 3318748, at *34 (C.D. Cal. Jan. 31, 2023) (concluding that "the extent of the harm caused was minimal" because "there [was] no community caretaking justification . . . served by the impound and possible forfeiture of Plaintiffs' vehicles.") (quotations omitted).  Plaintiffs do not submit any evidence to the contrary.  "Without material evidence . . . to the contrary, [the court] must afford 'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments.'"  Pimentel, 974 F.3d at 924 (quoting Bajakajian, 540 U.S. at 336).  In light of this deference, the Court finds that the $4,380.50 fines are "sufficiently large enough to deter [] violations" but are "not so large as to be grossly out of proportion' to the harms to public health and safety.'"  See Gutierrez, 2021 WL 6752001, at *3 (citing Pimentel, 974 F.3d at 924).

Having considered the Bajakian factors, the Court concludes that the $4,380.50 fee—the amount of fees the City Defendants say are currently due—is not grossly disproportionate under the Eighth Amendment.  Because the $4,380.50 fee is not grossly disproportionate under the Eighth Amendment, the Court does not analyze the City Defendants' liability for this fee.  It is sufficient to grant the City Defendants' motion on the grounds that the $4,380.50 does not violate the Eighth Amendment.  See Patel v. Maricopa Cty., 585 F. App'x 452 (9th Cir. 2014) (affirming order granting summary judgment in favor of defendants on plaintiff's Monell claims where plaintiff did not show an underlying constitutional violation).

### a.    $23,340.50 Fee

It is undisputed that, around the time that Plaintiffs brought suit, AutoReturn's website reflected a total balance of $23,340.50 and that such a fee could be excessive under the excessive fines clause.  City Reply at 4.  The City Defendants do not address the Bajakajian factors as to this higher fee and offer no evidence showing that it "bear[s] some relationship to the gravity of the offense that it is designed to punish."  See Bajakajian, 524 U.S. at 334.  Defendants have therefore abandoned the argument that $23,340.50 is not

14

excessive.  See Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case.") (quotations omitted).  Accordingly, the Court does not address the Bajakajian factors for this fee.

Next, this order addresses whether the City Defendants—CCSF and Tumlin—can be held liable for the $23,340.50 fee, assuming it is excessive.

### 2.    Monell Liability Against CCSF

Local government entities can be liable under 42 U.S.C. § 1983 if the City's "policies, whether set by the government's lawmakers or by those whose edicts or acts . . . may fairly be said to represent official policy, caused the particular constitutional violation at issue." King v. Cnty. of Los Angeles, 885 F.3d 548, 558 (9th Cir. 2018) (quoting Streit v. Cnty. of Los Angeles, 236 F.3d 552, 559 (9th Cir. 2001)).  Municipal liability "must be based upon enforcement of a municipal policy or custom that causes deprivation of a plaintiff's [constitutional] right, and not upon the municipality's mere employment of a constitutional tortfeasor." Avalos v. Baca, 517 F. Supp. 2d 1156, 1162 (C.D. Cal. 2007), aff'd, 596 F.3d 583 (9th Cir. 2010) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

"To maintain a [section] 1983 claim against a public entity defendant or a supervisor not personally involved in the alleged violation, a plaintiff must allege that his or her constitutional injury resulted from a policy, practice, or custom of the local entity." Id.  "While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights." Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).  "Thus, municipal defendants cannot be held liable when no constitutional violation has occurred." Harper v. Cty. of San Jose, No. C 09-05758 JW, 2011 WL 7109218, at *3 (N.D. Cal. Mar. 7, 2011).  To prevail on a section 1983 complaint against a government entity under Monell, "a plaintiff must satisfy a three-part test: (1) an official violated the plaintiff's constitutional rights; (2) the violation is a part of policy or custom

and may not be an isolated incident; and (3) there is a nexus between the specific policy or custom to the plaintiff's injury." Id. (citing Monell, 436 U.S. at 690–92).

Because the Court assumes that the $23,340.50 fee is excessive in violation of the Eighth Amendment, the Court proceeds to analyze the second prong. The Court must determine if Plaintiffs have established that CCSF has a policy, custom, or practice of imposing excessive fines.

Plaintiffs have not identified any specific policy, custom, or practice of Defendants that injured them. Plaintiffs point to CCSF and AutoReturn's contract as evidence of CCSF's "policy" of imposing excessive fines. Pl. Mot. at 21. According to Plaintiffs, this contract "sets in motion the pre-arranged plan . . . to seize vehicles found on the street on a frequent basis, hold those vehicles at [AutoReturn's] impound until recovered, and . . . impose the charges preset" by the contract. Id. Plaintiffs further argue that because neither the schedule of fees nor the contract "say the charges shall be capped at 60 days," this is evidence of a "policy or custom" of charging excessive fines. Id. However, the contract at most establishes CCSF's policy of imposing a $4,380.50 fee, see Deir Decl. Ex. B, which the Court concludes does not violate the Eighth Amendment, see supra section A.1.a. Therefore, Plaintiffs have failed to identify a policy on the part of CCSF that would provide a basis for liability under Monell.

As to the $23,340.50 fee, the evidence submitted by Plaintiffs does not show that CCSF has "longstanding practice or custom" of charging this fee. See Hopper v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001). At most, Plaintiffs' evidence shows that, in this instance, AutoReturn's website incorrectly listed a $23,340.50 fee because AutoReturn failed to account for California Vehicle Code section 22851 (the 60-day storage fee limit). This is insufficient to establish Monell liability against CCSF because it fails to establish that CCSF's policy was the moving force behind the inaccurate charge. Further, Monell liability under section 1983 cannot rest on "a single, isolated unlawful act by a non-policymaking employee." Robinson, 992 F. Supp.1198, 1205 (C.D. Cal. 1998); see also Trevino v. Gates, 99 F.3d 911 (9th Cir. 1996) ("Liability for improper custom may not be

predicated on isolated or sporadic incidents"); <u>Mehhan v. Los Angeles Cnty.</u>, 856 F.2d 102 (9th Cir. 1988) (finding that two incidents were insufficient to establish custom). Although the City Defendants have admitted that AutoReturn's website listed a $23,340.50 fee, they have also clarified that this amount was inaccurate, and "AutoReturn's website has now been updated to reflect the accurate amount of fees owed."  Kwan Decl. ¶ 4; <u>see</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker.").  The undisputed evidence falls far short of establishing a "persistent and widespread" practice of charging excessive towing and storage fees.  <u>See</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011).  The record is devoid of any evidence of any other event involving similar conduct or constitutional violations.  Thus, the evidence is insufficient to support a <u>Monell</u> claim against CCSF based on the existence of a practice that was widespread and so permanent and well settled as to constitute a custom, policy, or practice.  <u>See</u> <u>Estate of Adomako v. City of Fremont</u>, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) (concluding that the plaintiff failed to sufficiently allege a pattern, policy, or custom where the complaint only alleged facts pertaining to the plaintiff).

For these reasons, the Court concludes that Plaintiffs have failed to establish a "custom or policy" and that CCSF is entitled to summary judgment as to the Eighth Amendment claim.

### 3.   Individual Liability Against Tumlin

Plaintiffs also move for summary judgment against Tumlin, the SFMTA Director, on the Eighth Amendment Claim.  <u>See generally</u> Pl. Mot.  The City Defendants respond that the Court should not grant summary judgment against Tumlin because there is no evidence establishing individual capacity liability against him.  City Reply at 12.[9]  The

---

[9] In the alternative, Defendants argue that Tumlin is entitled to qualified immunity.  City Reply at 13.  Because the Court denies Plaintiffs' motion for summary judgment against

United States District Court
Northern District of California

1    Court agrees with the City Defendants.

2        "[A] corporate officer does not incur personal liability for torts of the corporation

3    merely by reason of their official position, unless they participate in the wrong or authorize

4    or direct that it be done."  Caroline Cas. Ins. Co. v. RDD, Inc., 685 F. Supp. 2d 1052, 1058

5    (N.D. Cal. 2010).  "In order to establish liability under § 1983, the plaintiff must allege the

6    defendant's 'personal participation,' because there is 'no respondeat superior liability.'"

7    Enos v. Young, NO. 21-16129, 2022 WL 12325438, at *1 (9th Cir. Oct. 21, 2022)

8    (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).  A supervisor may be liable

9    if "there exists either (1) his or her personal involvement in the constitutional deprivation,

10   or (2) a sufficient causal connection between the supervisor's wrongful conduct and the

11   constitutional violation."  Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 798 (9th Cir.

12   2018) (citation omitted).

13       Plaintiffs have not presented any evidence that establishes Tumlin's personal

14   participation in the constitutional deprivation, nor evidence showing a "sufficient causal

15   connection" between Tumlin's conduct and the constitutional violation.  See Redman v.

16   Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991).  Plaintiffs argue that "Tumlin . . .

17   received notice of [their] Exhibits 'A' through 'D' via email[] on April 20, 2020 but

18   continued to keep the [vehicle] under false pretense that the tow was valid . . ."  Pl. Mot. at

19   10.  However, Plaintiffs have not provided evidence of this email.  And Plaintiffs'

20   arguments and speculations of Tumlin's personal involvement in storing the vehicle and

21   charging them the towing fees are not evidence.

22       Plaintiffs have therefore not established Tumlin's liability under section 1983, and

23   their claim against Tumlin fails.  The Court grants summary judgment for Defendant

24   Tumlin on the Eighth Amendment claim on this basis.

25       **B.    Fourth Amendment Claim Against Tumlin**

26       Plaintiffs also move for summary judgment against Tumlin on the Fourth

27   _____

28   Tumlin on the grounds that they have not established Tumlin's individual capacity
     liability, the Court does not address this argument.

United States District Court
Northern District of California

Amendment Claim.  <u>See</u> Pl. Mot. at 16–17.  For the same reasons discussed above, the Court concludes that Plaintiffs have not established Tumlin's liability under section 1983, and the Court grants summary judgment for Defendant Tumlin on the Fourth Amendment claim.

### C.       Claims Against the AutoReturn Defendants

#### 1.       Fourth Amendment

Plaintiffs claim that the AutoReturn Defendants unreasonably seized their vehicle in violation of the Fourth Amendment.  Pl. Mot. at 15–16.  The AutoReturn Defendants assert that they are entitled to summary judgment on Plaintiffs' Fourth Amendment claim because they acted on their good faith belief that their actions were constitutional. AutoReturn MSJ at 7.  In the alternative, the AutoReturn Defendants argue that the tow was lawful under the community caretaking doctrine.  <u>Id.</u> at 9.  Plaintiffs oppose, arguing that there is a triable issue of fact as to whether "No Stopping" signage was posted at the time that Plaintiffs parked their vehicle.  Pl. Mot. at 4.

#### a.       Good Faith Defense

The Court first determines whether the AutoReturn Defendants are entitled to summary judgment on the Fourth Amendment claim on the grounds that they towed and stored Plaintiffs' vehicle in good faith.  For the reasons set forth below, the Court concludes that they are so entitled and grants the AutoReturn Defendants' motion on the Fourth Amendment claim on that basis.

The law is settled that a private party acting in concert with state authority is not entitled to qualified immunity under section 1983.  <u>Richardson v. McKnight</u>, 521 U.S. 399, 412 (1987).  Nonetheless, both the Supreme Court and the Ninth Circuit have opined that a section 1983 private defendant may have a "good faith defense."  In <u>Wyatt v. Cole</u>, 504 U.S. 158, 169 (1992), the Supreme Court held that it was not foreclosing the possibility that private defendants faced with section 1983 liability "could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens."  <u>See</u>

also Richardson v. McKnight, 521 U.S. 399, 413–14 (1997) (same); Jensen v. Lane Cnty., 222 F.3d 570, 580 n.5 (9th Cir. 2000) (not foreclosing the possibility that a section 1983 private defendant may be able to assert an affirmative good faith defense); accord Robinson v. San Bernardino Police Dept., 992 F. Supp. 1198, 1207 (C.D. Cal. 1998) (concluding that a private defendant was entitled a good faith defense and summary judgment because she believed that the police had probable cause or a search warrant to perform a sexual examination).

Additionally, in Clement v. City of Glendale, the Ninth Circuit recognized that private defendants may invoke a good faith defense to a section 1983 claim on facts similar to those presented here.[10] 518 F.3d 1090, 1097 (9th Cir. 2008). There, a plaintiff sued a towing company under section 1983 for towing the plaintiff's vehicle, which was parked in violation state registration laws. Id. at 1092–93. Clement held that "the facts of th[e] case justif[ied] allowing [the towing company] to assert [] a good faith defense." Id.

---

[10] Plaintiffs argue that Clement, 518 F.3d at 1097, should not apply because Clement concerned the Fourteenth Amendment, not the Fourth Amendment. Pl. Mot. at 18–19. The Court is not persuaded by Plaintiffs' argument. Clement held that private defendants may assert a "good faith" defense to a section 1983 defense. Id. Clement's holding was not limited to Fourteenth Amendment claims. See, e.g., Metal Jeans, Inc. v. California, 737 F. App'x 826, 829–30 (9th Cir. 2018) (good faith defense applied to shield towing company from section 1983 liability for alleged Fourth Amendment violation); Deligiannis v. City of Anaheim, No. SACV 06-720 DOC(JC), 2010 WL 1444538, at *12 (C.D. Cal. Mar. 2, 2010), report and recommendation adopted, No. SACV 06-720DOC(JC), 2010 WL 1444535 (C.D. Cal. Apr. 3, 2010), aff'd, 471 F. App'x 603 (9th Cir. 2012) (applying Clement and granting defendant's summary judgment on plaintiff's section 1983 claims based on a good faith defense); Weldon v. Conlee, No. 1:13-CV-00540-LJO, 2015 WL 1811882, at *10 (E.D. Cal. Apr. 21, 2015), aff'd, 684 F. App'x 612 (9th Cir. 2017) (applying Clement to a Fourth Amendment claim and granting summary judgment for defendants based on a good faith defense); Harper v. Ramirez, No. SACV150662JAKAFM, 2015 WL 9918409, at *9 (C.D. Cal. Dec. 16, 2015), report and recommendation adopted, No. SACV1500662JAKAFM, 2016 WL 354068, at *1 (C.D. Cal. Jan. 27, 2016) (concluding that the defendant was "entitled to a good faith defense against any federal civil rights claim.").
Plaintiffs further argue that, unlike Clement, AutoReturn's tow truck driver was acting under directions of a SFMTA employee, not a police officer. Pl. Mot. at 18–19. However, this fact is inapposite because the SFMTA officer was a parking enforcement officer, Deir Decl. ¶ 3–4, and like Clement, AutoReturn "did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions." See 518 F.3d at 1097.

United States District Court
Northern District of California

at 1097.  The court explained that the tow was authorized by the police department and "the company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions."  Id. at 1097.  Because the towing company acted at the direction of the police with no reason to suspect that doing so was constitutionally improper, the towing company was entitled to a good faith defense.  Id.; see also Tarantino v. Syputo, No. C 03-03450 MHP, 2006 WL 1530030, at *10 (N.D. Cal. June 2, 2006), aff'd sub nom. Tarantino v. Syputa, 270 F. App'x 675 (9th Cir. 2008) (concluding that towing company defendants were "entitled to assert a defense to liability based on their good faith belief that they were towing plaintiff's vehicle in compliance with a valid order by city officials.").

### iv.    Towing

Here, the undisputed facts show that the AutoReturn Defendants "acted solely at the behest of the [C]ity defendants" in towing Plaintiffs' vehicle.  See Tarantino, 2006 WL 1530030, at *9.  It is undisputed that the AutoReturn Defendants acted on instructions from the city officials that called for the tow.  AutoReturn received a tow request from a SFMTA parking enforcement member, and, upon arrival, SFMTA gave the tow truck driver a tow slip.  Deir Decl. ¶¶ 3–4, Ex. A.  It is further undisputed that the tow slip cited San Francisco Transportation Code 7.2.46 as the reason for the tow.  Id. (TRC 7.2.46 "relates to parking in a posted construction zone.").  The AutoReturn Defendants acted in accordance with the City's towing requirements, as outlined in their contract, which required participating towing companies to respond promptly to calls for service.  Deir Decl. ¶ 2, Ex. A, Second Amended Contract, Article 2.2 (AutoReturn "shall dispatch Tow Truck Operators (TTOs) from Central Dispatch upon request.").  Like the towing company in Clement, the AutoReturn Defendants acted at the direction of the City Defendants and had no reason to believe that towing the vehicle implicated Plaintiffs' Fourth Amendment rights.  See 518 F.3d at 1096–97.  The SFMTA officer gave AutoReturn a tow slip that said the reason for the tow was parking in a construction zone, Deir Decl. ¶ 4, Ex. B (tow slip), and the SFMTA parking enforcement officer directed the tow activity, id. ¶¶ 3–5.

1   Additionally, at the time the AutoReturn Defendants arrived, the vehicle was parked in a

2   construction zone with "No Stopping" signs.[11]  Id.  In light of this, a reasonable person in

3   AutoReturn's position could have believed that towing the vehicle under such

4   circumstances was lawful, and the AutoReturn Defendants had no reason to question the

5   validity of the tow.

6          Further, the alleged constitutional defect—lack of notice—could not have been

7   observed by the AutoReturn Defendants' towing company at the time they conducted the

8   tow because at that point, the SFMTA staff member handed the tow truck driver a tow slip,

9   Deir Decl. ¶ 4, Ex. B, the "No Stopping" signs were clearly posted, Bey Decl. Ex. D, and

10  the area was visibly a construction zone, Rosenbaum Decl. Ex. A at 78:2–4 ("A: Yes.

11  When the tow truck driver got there, he sees a parking sign there, and so he feels valid in

12  what he [is] doing by taking the car away."), 78:14–18; 81:18–21.

13         Plaintiffs have provided no basis for questioning the AutoReturn Defendants'

14  evidence in support of their assertion of subjective good faith.  Thus, there is no material

15  dispute that the AutoReturn Defendants acted in subjective good faith in towing Plaintiffs'

16  vehicle.

17                        **v.      Storing**

18         For similar reasons, the Court also concludes that the undisputed facts show that the

19  AutoReturn Defendants acted in good faith in storing Plaintiffs' vehicles.  Like the towing

20  company in Clement, the AutoReturn Defendants "did [their] best to follow the law and

21  had no reason to suspect that there would be a constitutional challenge to its actions."  See

22  518 F.3d at 1097.  Once the vehicle was towed and impounded, the AutoReturn

23

24  _____

[11] Plaintiffs argue that whether the "No Stopping" signs were posted at the time that
25  Plaintiff Bey parked the vehicle is a material fact in dispute.  Pl. Mot. 15–16.  However,
    this fact is immaterial to Plaintiffs' Fourth Amendment claim against the AutoReturn
26  Defendants because application of the good faith defense turns on the AutoReturn
    Defendants' subjective good faith.  Franklin v. Fox, No. C 97–2443, 2001 WL 114438, at
27  *3–*4 (N.D. Cal. Jan. 22, 2001); accord Clement, 518 F.3d at 1097 (looking to the
    defendant's subjective good faith).  Here, it is undisputed that the "No Stopping" sign was
28  posted at the time the AutoReturn Defendants arrived at the scene to tow the vehicle.  See
    Rosenbaum Decl. Ex. A at 78:2–4; 78:14–18; 81:18–21.

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendants were required to store the vehicle and AutoReturn employees were prohibited from releasing the vehicle to Plaintiffs until they provided proof of the vehicle's registration. See Deir Decl. Ex. A, at J.4. ("Towed vehicles shall be released . . . from impoundment in accordance with the California Vehicle Code"); id. Ex. A at J.5.c. ("The Contractor shall verify that the requested vehicle is registered as defined by California law by reviewing registration tag"); Deir Decl. ¶ 6 ("AutoReturn was required to store [the vehicle] and . . . was prohibited from releasing the vehicle to the owners without proof of ownership and registration.  The vehicle owners never provided proof of registration"); California Vehicle Code section 22850.3 ("A vehicle placed in storage pursuant to Section 22850 shall be released to the owner" only if the owner provides "satisfactory proof of current vehicle registration."); California Vehicle Code sections 4000, et seq. ("A person shall not drive [or] move . . . any motor vehicle . . . unless it is registered and the appropriate fees have been paid . . .").

Plaintiffs have not provided a basis for questioning the AutoReturn Defendants' evidence in support of their claim of subjective good faith.  Plaintiffs argue that the AutoReturn Defendants acted in bad faith in storing the vehicle because on April 20, 2020, Plaintiffs emailed Mr. Scanlan photographs of the tow and AutoReturn "continued to keep the [vehicle] under the false pretense that the tow was valid under law."  Pl. Mot. at 10. However, as described supra, the Court concludes that the AutoReturn Defendants acted in subjective good faith in towing Plaintiffs' vehicle, and once towed, the AutoReturn Defendants believed in good faith that they could not release the vehicle absent proof of the vehicle's registration.  See California Vehicle Code section 22850.  Plaintiffs never presented such proof.  Deir Decl. ¶ 6.

Because there are no genuine issues of material fact underlying the AutoReturn Defendants' good faith defense, the Court GRANTS summary judgment for the AutoReturn Defendants on the Fourth Amendment claim.

**b.     Community Caretaker Doctrine**

In the alternative, the AutoReturn Defendants contend that the tow was lawful

under the community caretaking exception to the Fourth Amendment, which authorizes peace officers to "impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic." AutoReturn MSJ at 9. The Court agrees.

Police officers may, in their "community caretaking" function, seize and impound vehicles that are impeding traffic or threatening public safety and convenience. South Dakota v. Opperman, 428 U.S. 364, 369 (1976). The Supreme Court has provided two examples that would justify the community caretaking function: (1) vehicles disabled or damaged in an accident; and (2) vehicles in violation of parking ordinances, thereby jeopardizing "both the public safety and the efficient movement of vehicular traffic." Opperman, 428 U.S. at 368–69; see also Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005) ("The purpose of the community caretaking function is to remove vehicles that are presently impeding traffic or creating a hazard."). "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." Miranda, 429 F.3d at 864. In assessing whether the vehicle's seizure is justified under the community caretaker doctrine, courts "must examine whether th[e] seizure is reasonable based on all of the facts presented." Id.

The AutoReturn Defendants contend that Plaintiffs' "vehicle posed a hazard to community safety at the time it was seized and the vehicle itself could have been damaged." AutoReturn MSJ at 9. It is undisputed that Plaintiffs' vehicle was parked on a public street, in an area that was actively undergoing construction at the time of the tow. Kwan Decl. Ex. 1 at 19:10–11, 25:17–26:6, referencing Ex. 4 to Pl. Bey's deposition; id. at 81:18–24 ("Q: [W]hen the tow truck driver arrives at the scene, does he see a construction zone? . . . A: Oh, yeah. It was like a movie set."). It is further undisputed that when the AutoReturn Defendants arrived at the scene, the vehicle was "already ticketed [and] it was clearly parked in an area that was actively preparing for or undergoing construction." AutoReturn MSJ at 9; Bey Decl. Ex. D (images of the vehicle in a construction zone); Rosenbaum Decl. Ex. A at 78:2–4; 78:14–18; 81:18–21.

Plaintiffs contend that the community caretaking rationale does not apply because there were no "No Parking" signs at the time that Plaintiffs parked their vehicle. Pl. Mot. at 4. However, this is immaterial to the inquiry because it has no bearing on whether the vehicle posed a hazard to the community at the time it was seized. This Court must, as noted above, consider the location of the vehicle and the police officer's duty to prevent it from creating a hazard to others. Here, the AutoReturn Defendants offer evidence that the vehicle was parked on Ellis Street near Powell Street—an area covered by PG&E's occupancy permit. Kwan Decl. Ex. 1 at 19:10–11, 25:17–26:6, referencing Ex. 4 to Pl. Bey's deposition. Additionally, despite arguing that there is no evidence that the vehicle "was blocking the movement of cars or other equipment on the public street," Pl. Mot. at 4, Plaintiffs presented evidence that their vehicle was in fact parked in a construction zone at the time it was towed, Bey Decl. Exs. A–F. Under these circumstances, Plaintiffs' vehicle was creating an impediment to traffic and threatening public safety. An officer may reasonably order an impoundment in a situation where the location of the vehicle creates the need for the police to protect the vehicle or to avoid a hazard to the community.

Thus, the undisputed evidence establishes that the AutoReturn Defendants' seizure of Plaintiffs' vehicle was permissible under the community caretaking doctrine.

Based on the good faith defense and the community caretaking doctrine, the AutoReturn Defendants prevail on the Fourth Amendment claim. The Court therefore GRANTS the AutoReturn Defendants' motion for summary judgment.

### 2. Eighth Amendment

Plaintiffs' Eighth Amendment claim against the AutoReturn Defendants is that they charged Plaintiffs an "excessive fine and penalty" in violation of the Eighth Amendment. Pl. Mot. at 17. The AutoReturn Defendants assert that they are entitled to summary judgment on the Eighth Amendment claim because they acted on their good faith belief that their actions were constitutional. AutoReturn MSJ at 7–8; AutoReturn Reply at 7–10.

For the same reasons discussed above, the Court concludes that the AutoReturn Defendants are entitled to a good faith defense on the Eighth Amendment claim. There is

1   no dispute that the AutoReturn Defendants acted pursuant to their contract with CCSF, and

2   "merely passe[d] through the fees that the City sets and charges," and that they "never had

3   any reason to question the constitutionality or legality of the fees."  Deir Decl. ¶ 7 and Ex.

4   A (Schedule of Fees).  As to the $23,340.50 fee, the AutoReturn Defendants' evidence

5   shows that they: (1) believed in good faith that the fees were constitutional, see Deir Decl.

6   ¶ 7, and (2) never charged the $23,340.50 fee, nor would they have "collect[ed] fees in

7   excess of the legal [60-day] maximum," id. ¶ 9.  Plaintiffs have provided no basis for

8   questioning the AutoReturn Defendants' evidence in support of their claim of subjective

9   good faith.[12]

10         Because there are no genuine issues of material fact underlying the AutoReturn

11  Defendants' good faith defense, the Court GRANTS summary judgment for the

12  AutoReturn Defendants on the Eighth Amendment claim.

## IV.    CONCLUSION

13         For the foregoing reasons, the Court GRANTS Defendants' motions as to all claims

14  and DENIES Plaintiffs' cross-motion.

15         **IT IS SO ORDERED.**

16         Dated: April 25 , 2024

17                                                    _____
18                                                    CHARLES R. BREYER
                                                      United States District Judge

---

[12] Plaintiffs offer no evidence other than AutoReturn's website, Bey Decl. Ex. L (showing a total fee of $20,033.00), and Plaintiff Bey's declaration in which he states that he "do[es] not recall being offered any reduction of fees. . .," id. ¶ 7.  However, the AutoReturn Defendants show that the fee listed on their website was inaccurate, Deir Decl. ¶¶ 8–9, and submit evidence that they would have accounted for the 60-day storage fee limit if Plaintiffs had called to inquire about the payment, id. ¶ 9.

United States District Court
Northern District of California